### STATE v. GEORGE KORICH.[1]

February 2, 1945.

No. 33,948.

*William Lloyd Sholes, Hayden C. Covington,* and *Roy A. Swayze,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

MATSON, JUSTICE.

Defendant appeals from a judgment and order of the municipal court of Minneapolis finding him guilty of violating the disorderly conduct ordinance.

[1]Reported in 17 N. W. (2d) 497.

Defendant, a Jehovah's Witness, certified by the Watchtower Bible & Tract Society as "an ordained minister of Jehovah God to preach the gospel of God's Kingdom under Christ Jesus," was arrested in Minneapolis on March 3, 1944, while going from one apartment to another in a 20-family apartment building for the uncontradicted purpose of distributing Bible tracts to any tenant who might be interested. He alleged that he was looking in particular for a Bohemian on whom he had called before and who had invited him to return. Defendant carried with him a portable phonograph, equipped with a recorded Bible sermon, and also books and pamphlets furnished by the Watchtower society. No charge was made by him for either the books or the pamphlets, but contributions were accepted from those willing to give. The phonograph was played only when he was invited to enter the home to present his message.

About a month prior to the occasion involved in this appeal, defendant had called at the same apartment house and had been told by the caretaker to stop disturbing the tenants and to keep off the premises. In the present case, defendant had, upon entering the building, proceeded to the second floor and was ringing a tenant's doorbell when the caretaker appeared and grabbed him by the shoulder and said: "Didn't I tell you to * * * get out and stay out?" Defendant told the caretaker to keep his hands off. Thereupon the caretaker asked him if he had not seen at the entrance to the building the sign: "No Solicitors Allowed." Defendant declared the sign did not apply to him because he was a minister of the gospel. One of the tenants, upon the request of the caretaker, telephoned for the police. Defendant continued to make calls on the second floor and later on the first floor. When ready to leave the building, he alleges that the caretaker and another man stood in front of the exit door to prevent his departure. In a moment two police officers arrived. The caretaker requested the officers to arrest defendant because he had been soliciting in the building contrary to the rules governing the premises. In a quiet and orderly manner, defendant pointed out that he considered

himself a minister of the gospel and that his work was not that of solicitation. When asked his name, he handed the officers his card as a means of identification.

At the police station, defendant was booked on a tab charge for the violation of the disorderly conduct ordinance found on page 760 of Pulling's Compilation of the Minneapolis City Charter and Ordinances, which reads as follows:

"Sec. 2. Any person or persons who shall make, aid, countenance or assist in making any noise, riot, disturbance or improper diversion, and all persons who shall collect in bodies or crowds in said city, for unlawful purposes or to the annoyance or disturbance of the citizens or travelers, shall, for each offense, on conviction before the Municipal Court of the City of Minneapolis, be liable to the same fine and punishment provided for in Section 1 of this ordinance."

"Sec. 1. (Punishment:)

"* * * fine not exceeding $100.00 or by imprisonment not exceeding 90 days."

The trial court adjudged defendant guilty and assessed a fine of $10, and, in default of payment thereof, he was to be imprisoned at hard labor for ten days in the city workhouse. Defendant moved for an order vacating the findings and conclusions of the court and the judgment of conviction and for an order amending the findings of guilty to not guilty and for a judgment of acquittal, or, in the alternative, for a new trial upon the specific grounds, among others, that the evidence did not justify a conviction under the ordinance and that his conviction constituted an infringement of his rights of freedom of speech, freedom of the press, and freedom of worship as guaranteed to him by U. S. Const. Amendments I and XIV, and Minn. Const. art. 1. The motion was denied in its entirety, and defendant appealed.

The evidence fails to sustain defendant's conviction under the ordinance. The test applied in State v. Zanker, 179 Minn. 355, 229 N. W. 311, and quoted with approval in State v. Cooper, 205 Minn.

333, 285 N. W. 903, 122 A. L. R. 727, is applicable here. It is stated in the Zanker case thus (179 Minn. 357, 229 N. W. 312):

"* * * conduct is disorderly in the ordinary sense when it is of such nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby. The probable and natural consequence of the conduct is the important element."

Was defendant's conduct, in the light of the foregoing test, "of such nature as to affect the peace and quiet" of the persons witnessing it so as to "be disturbed or provoked to resentment"? We think not. Defendant was proceeding in a quiet and orderly manner when he was suddenly confronted by the caretaker, who grasped him by the shoulder and demanded: "Didn't I tell you to * * * get out and stay out?" Without raising his voice, defendant requested the caretaker to remove his hands, and then, in a calm and courteous manner, stated that he was a minister of the gospel and that the building rule against solicitors did not apply to him. None of the tenants appeared to testify that they had been disturbed by defendant or that he had acted improperly in addressing them. When the police officers appeared, he again calmly explained that he considered himself a clergyman, and he presented his card for identification. In a peaceful manner, he accompanied the officers to the station. His calmness and courtesy may have been annoying to the caretaker as well as to the police officers, but such annoyance does not justify a finding of disorderly conduct. Not every annoyance is born of culpable conduct. No commotion or disturbance is shown to have been caused by defendant. There is nothing in the evidence to show that the reasonable tendency of defendant's actions was to arouse anger to the extent that a disturbance or a breach of the peace would result. See, People v. Phillips, 245 N. Y. 401, 157 N. E. 508.

In State v. Cooper, 205 Minn. 333, 285 N. W. 903, 122 A. L. R. 727, it was not the intention of this court to hold that, in the absence of supporting evidence, a finding of disorderly conduct by

the magistrate was conclusive on that question nor to hold that the magistrate had the power to define the crime. That definition must be made by the ordinance. Evidence before the magistrate must be sufficient to support a finding that the conduct complained of falls within the definition of the ordinance as interpreted by the courts.

It follows that the judgment of conviction must be reversed, and it is so ordered.

Since the evidence fails to sustain defendant's conviction, no consideration need be given to the question of any possible infringement of his constitutional rights.

Reversed.