LARRY WHITED *v*. STATE OF INDIANA.

[No. 270S32.  Filed May 10, 1971.  Rehearing denied with opinion
July 14, 1971.]

*Brent A. Barnhart, Kenneth G. Kern & Associates,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal from a conviction for disorderly conduct as proscribed by Ind. Ann. Stat. § 10-1510 (1956 Repl.).

Appellant was tried without the intervention of a jury and found guilty; a fine of fifty dollars ($50.00) and a sentence of thirty (30) days in the Marion County Jail were imposed.

A motion for new trial was filed and was denied by the trial court. One portion of that motion is asserted here; appellant contends there was insufficient evidence as a matter of law to support his conviction.

The statute under which appellant was charged provides that:

"§ 10-1510. Disorderly conduct—Penalty.—Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultuous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct, and upon conviction shall be fined in any sum not exceeding one hundred dollars [$100], to which may be added imprisonment for not to exceed sixty [60] days."

In reviewing a conviction where sufficiency of the evidence is raised this court may consider only that evidence favorable to the state and all reasonable inferences to be drawn therefrom. *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514. We will not weigh the evidence nor determine the credibility of witnesses but will merely examine the record to ascertain if, as a matter of law, there is sufficient evidence to establish the elements of the offense. *Kirk* v. *State* (1970), 254 Ind. 54, 257 N. E. 2d 304.

As indicated by the statute there must exist under the facts of this case evidence of probative value that appellant

(1) acted in a loud, boisterous manner
(2) so as to disturb the peace and quiet of the neigborhood.

The following evidence was adduced at trial.

The Indianapolis Police Department went to the area of a house where appellant was a guest bent upon a narcotics "raid" in search of contraband thought to be on the premises. As appellant and two or three men sat on the porch of the house sharing a bottle of wine they saw the officers approaching. As the policemen reached the area of the bottom porch step, or perhaps a short interval before that time, appellant, in a "loud and disorderly" manner "yelled" obscenities at the

officers, alluding to their lineage and freely employing colloquial terminology used by a minority of our citizens to refer to officers of the law. Appellant was asked for his identification and in response continued his tirade. He was arrested as were others who were on the porch. During the time this took place a large crowd gathered and more arrests ensued.

The police contingent which originally approached the home where appellant was arrested was composed of at least two vehicles and seven policemen. Later seven more vehicles were called to the scene.

Appellant contends there was a finding by the trial court that the crowd gathered due to appellant's acts and that the court regarded this as establishing the offense. Further he contends that the evidence does not support the finding.

First, from a review of the record as a whole it appears that the court recognized that it was the nature of appellant's conduct that constitutes the offense. In other words, the court realized that whether a crowd gathered or not a conviction would be proper if appellant's conduct was such as to "disturb the neighborhood". While the fact that a growd gathered may be of some considerable evidentiary weight on whether the statute was violated, it is not requisite to a conviction.

Second, we find sufficient evidence in the record to support both the conviction and, even though it is not a necessary element of the offense, the alleged finding that a crowd was drawn by appellant's acts. The police officers testified that appellant "yelled" in a "loud, disorderly" manner. This conduct occurred in an area of residences that prior to such acts had, from all that is in the record, been devoted to normal and usual urban pursuits. The mood that existed was broken. From the evidence it was proper to infer that:

"The language and the conduct of . . . [appellant], within the hearing and view of the public was certainly most offensive, and was such as *in its nature* would 'disturb the peace

and quiet of the neighborhood.' " *Romary* v. *State* (1945), 223 Ind. 667, 671, 64 N. E. 2d 22, 23 (our emphasis).

Considering the nature of Whited's conduct, as reported by the officers, and the area in which it was undertaken a violation of the statute was established.

It is also reasonable to infer that the conduct on the porch drew the crowd that gathered. Certainly this court will not assert its judgment in this regard over that of the trial court which had the witnesses before it. Such is not our function. *Kirk* v. *State, supra.*

Appellant next asserts that it was the policemen who were disturbed and not the neighborhood. Since, he contends, only policemen testified as to the nature of his conduct there is no showing that persons in the neighborhood were disturbed. Such reasoning overlooks the concept that only a showing that conduct which *by its nature* is offensive in the context in which it is committed is required to support a conviction under the statute. Here the officers testified as to the quality of Whited's actions. The fact that no neighbor gave similar testimony is not fatal. All that is required is a showing that an accused's actions were possessed of loud and offensive characteristics in the setting in which they were done. Such a state of facts can as well be established by one source of testimony as another.

An allusion is made in appellant's brief to the fact that appellant's conduct may be excused as a reasonable reaction to illegal activity because the police had no warrant to search the premises. The record is void of mention as to whether this is true or not and is also empty of evidence on the issue of whether there may have existed sufficient probable cause to support a "raid" without a warrant. But, we need not reach that issue as the record shows that even before appellant or any other person on the porch inquired into any possible lack of police authority the loud unseemly actions complained of were undertaken. In brief, what-

ever validity such an argument might possess, it must fail because appellant commenced his activity without even an inquiry into the legal status of the officers.

Also, appellant relies on the fact that policemen are naturally subjected to certain abuses in their work to support an assertion that appellant's conduct should not be regarded as in violation of § 10-1510. However it is the offensive nature of the conduct in terms of the *neighborhood* that violates the statute. The officers in this case are not the focal point of the conviction. While they related the nature of appellant's acts it was the acts themselves and not those at whom they were directed that form the basis of the conviction.

Lastly, appellant relies on the case of *Williams* v. *District of Columbia* (D. C. App. 1969), 419 F. 2d 638 for the proposition that where only the policeman is offended a conviction for disorderly conduct will not lie. For reasons outlined above we do not regard this alleged holding of *Williams* as relevant here.

*Williams* however is pertinent insofar as it suggests that due to First Amendment freedoms a statute such as the one here in question must be read to require that any prohibited *speech* related activity must be proscribed *because it has a tendency to lead to violence.* We accept such constitutional analysis as indeed valid.

From the facts here in question we find that implicit in the trial court's ruling was the finding that such was the tendency of appellant's actions. In so holding we regard the fact that additional arrests were made of certain of those in the crowd that gathered as an item of evidence that appellant's acts tended to increase the likelihood of violence. However, we find equally persuasive in this regard the fact that he acted in resistance to what he could only fairly assume to be valid police activity without making the slightest inquiry of the officers. Of further moment is the fact that his acts were done in concert with the others on the porch.

For all the foregoing reasons we find that appellant's conviction must be affirmed.

Judgment affirmed.

Arterburn, C.J. and Givan, J., concur; Prentice, J., dissents with opinion in which DeBruler, J., concurs.

## DISSENTING OPINION

PRENTICE, J.—I am compelled to dissent from the majority opinion which, I believe supplies inferences that cannot be properly drawn from the evidence and omits salient and uncontroverted testimony.

On the evening in question, several squad cars full of policemen swarmed upon the defendant and several of his companions who were gathered on the porch of a private residence at No. 2024 North Talbot Street, in the City of Indianapolis. The record affirmatively shows that the police had no arrest warrant. It is silent upon the question of whether they possessed a search warrant or had grounds for a warrantless search. Under the circumstances in this case, had there been either, the burden would have been upon the State to disclose it, thus I resolve that question against it.

As the police approached the porch, one of the group of young men ran into the house; another hollered "Here come the big sons-of-bitches that is going to raid us again;" and the defendant yelled out "Here comes the damn pigs," or something to that effect. The police continued to ascend the steps to the porch, and one of them asked the defendant for his identification; whereupon the defendant told him, in the presence of the other policemen and such of his own companions as were still present, that he did not think that he had to tell him a God Damn thing; he hadn't done anything and for him to get his ass off his porch and quit harassing him and let him alone. These are the sole statements made by the defendant prior to his arrest. There is no evidence that the latter ones were loud or disorderly and no evidence that any

of them were heard by anyone other than the policemen and the defendant's companions.

It is difficult to discern exactly what transpired after the arrest or why, but it is clear that the foregoing relates all of the cogent events transpiring prior to the arrest and that they occurred in less time than it takes to read of them. Ultimately there were twelve police officers and five police vehicles present, and we are unable to determine whether they were all at the scene from the time the first policemen arrived or if they came later. Also, at some time following the arrest a large crowd "about a hundred and fifty" of milling spectators gathered. The defendant made other "fresh" remarks concerning the origin of Captain Owens, and several other persons were arrested. How long the entire melee lasted is not disclosed, but it is clear that the events lastly related occurred not prior to but following the defendant's arrest.

In the case at bar, it is apparent to me that it was not the actions of the defendant prior to the arrest that caused the crowd to gather but rather the extensive police action and possibly the action of the defendant and others committed subsequent to the arrest. Even if we were to affirm the finding of the trial judge, there is no evidence to sustain a conclusion that such conduct was calculated to or that it tended with sufficient directness to disturb the peace and quiet of any neighborhood or family, and for these reasons also, I would reverse.

There is nothing in the record to indicate that the defendant was tried for an offense other than the one for which he was arrested, thus only the acts committed prior to the arrest may be regarded. Thus the question to be here determined is whether or not the statements of the defendant made prior to his arrest, heard only by his companions and the intruding policemen, constituted the crime of disorderly conduct, which is defined by statute as follows:

"Disorderly conduct—Penalty.—Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the

peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultuous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct, and upon conviction, shall be fined in any sum not exceeding one hundred dollars [$100] to which may be added imprisonment for not to exceed sixty [60] days." [Acts 1943, ch. 243, § 1, Burns' § 10-1510 (1956 Repl.)]

The statute under consideration is so broad and general as to make its analysis extremely difficult. The acts deemed objectionable are expressed in terms that are not only overlapping, if not actually synonymous, but also relative. It must therefore be utilized with caution, lest its application to any given set of circumstances be a denial of constitutional freedoms. One aspect of the statute seems clear, however, and that is that it is not the *result* of the act that renders it disorderly conduct, but rather the *likelihood of the result* disturbing the peace and quiet of a family or a neighborhood. Thus, whether or not an offense has been committed depends not only upon the acts committed but also upon the circumstances surrounding the acts.

In pronouncing its judgment of guilty, the trial court announced its findings as follows:

"* * * From the evidence, the Court finds that it was his loud and boisterous conduct that drew the crowd. In other words that it was the crowd, the public, that was hearing this. For that reason there will be a finding of guilty."

There is abundant evidence that persons present, including the defendant, were loud and boisterous and that a crowd did gather, but there is no evidence, probative or otherwise, that his actions caused the crowd to gather; and for this reason the judgment should be reversed. However, assuming, arguendo, that such statements of the defendant did cause the crowd to gather, has the offense been committed. I think not. The result, while it may be some evidence of the offense, is neither conclusive nor an element of it. The trial judge then was in error if he found the defendant guilty simply

because there was sufficient evidence that defendant's actions caused the crowd to gather, which in turn disturbed the peace and quiet, etc.; but he would not have been in error if there had been sufficient evidence that the defendant's acts, which may have been loud and boisterous or disorderly, could reasonably have been expected under the attendant circumstances to produce such a disturbance. The probable and natural consequences of the conduct is the important element. *State* v. *Korich* (1945), 219 Minn. 268, 17 N. W. 2d 497.

Although they must be distinguished, not only because a breach of the peace is a common law offense, whereas the offense of disorderly conduct was unknown to the common law and exists only by virtue of statute, the concepts of the two are strongly overlapping. The statutes vary greatly, but it is generally considered that disorderly conduct embraces certain minor offenses, defined by statute or ordinance, consisting in disturbance of the peace and quiet of the public, the community, families or a class of persons or in conduct that tends to provoke a breach of the peace or to corrupt public morals. *State* v. *Reynolds* (1954), 243 Minn. 196, 66 N. W. 2d 886.

Statutes providing punishment for disorderly conduct, as in Indiana, frequently include as an element of the offense the requirement that the act disturbs, or be likely to disturb the public peace. *Carey* v. *District of Columbia,* 102 At. 2d 314 (D.C., 1954). And in a jurisdiction where there is no statutory crime of a breach of the peace but where the statutory definition of disorderly conduct includes a breach of the peace element, it has been held that the common law definition of breach of the peace, though not controlling, is helpful in construing the statute on disorderly conduct. *People* v. *Carcel* (1957), 3 N. Y. 2d 327, 165 N. Y. Supp. 2d 113, 144 N. E. 2d 81, 65 A. L. R. 2d 1145.

Throughout the various definitions appearing in the cases there runs a proposition that a breach of the peace may be generally defined as such a violation of the public order as amounts to a disturbance of the public tranquillity, by act or

conduct either directly having this effect or by inciting or tending to incite such a disturbance of the public tranquillity. Under this general definition, therefore, in laying the foundation for a prosecution for the offense of breach of the peace, it is not necessary that the peace actually be broken. Commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace, is sufficient. 12 Am. Jur. 2d 666, and cases there cited.

It has been held in some cases that since a police officer is charged with preserving the peace the mere use of offensive language toward him however abusive or vile it may be, cannot be said to tend to provoke a breach of the peace and therefore cannot constitute disorderly conduct. But this view has been repudiated as "largely fictional" in most jurisdictions. Better reasoning sustains the case of *City of St. Paul* v. *Morris* (1960), 258 Minn. 467, 104 N. W. 2d 902, Cert. Denied, 365 U. S. 815, 5 L. Ed. 2d 693, 81 S. Ct. 696, where it was pointed out that, although not every abusive epithet directed towards police officers would be sufficient to constitute the offense of disorderly conduct, indignities toward a police officer that go far beyond what any other citizen might reasonably be expected to endure amount to disorderly conduct.

Defendant has urged in his brief that the foundation for his conviction is that his conduct disturbed a policeman, which, standing alone, of course could not support the decision. I do not agree that the conviction rests upon this proposition. However, that some of the participants in the fiasco giving rise to the case were policemen is of importance, as one of the circumstances to be considered, along with all others, in determining whether the conduct of the accused was such as tends with sufficient directness to breach the peace. This is an appropriate time and opportunity to consider the position of a small segment of our society that delights in baiting and taunting policemen, who by reason of their position must exercise great self-restraint to avoid bringing discredit to their profession and their government, and also the position of that

small segment of our police who are disposed to deliberately abuse their positions, as well as a few who are not adequately trained or take short cuts through forbidden territory to achieve that which they believe to be legitimate and justifying ends.

Provocation is generally not a good defense in a prosecution for breach of the peace by the use of offensive language. *Schaal* v. *State* (1921), 150 Ark. 631, 235 S. W. 38. But under appropriate circumstances sufficient provocation may justify acts or words otherwise punishable as disorderly conduct. *City of Jacksonville* v. *Headen* (1891), 48 Ill. App. 60.

Thus, when a policeman is in the proper performance of his duty and another by conduct set forth in the statute and which is calculated to be, or is reasonably likely to be offensive to him or to incite others to be offensive to him, such conduct would be disorderly within the intent of the statute, if it is probable and natural that the consequences will be to divert or interfere with or limit his effective functioning and thereby create, contribute to, or foster the continuance of a disturbance to the peace and quiet of any neighborhood or family. While it is to be hoped that, among other desirable qualities, our policemen will have an extraordinarily high degree of emotional stability, we nevertheless are not justified in presuming such. We will remember that they labor under difficult and often exasperating circumstances, and we cannot ascribe to them a tolerance or boiling point higher than that of the ordinary man. Further, we have a right to expect him to be professionally competent and will presume him to be so. Therefore, if he clearly oversteps the boundaries of proper police action, he will be presumed to have done so with knowledge of the same and a wilful disregard of the rights and sensitivity of the assailed. Under such circumstances, he is the offender, is entitled to no greater degree of civility than any other person and responsible for the probable and natural consequences. This is not to say that every miscue of a policeman will justify provocative conduct by the person thereby

offended or inconvenienced. The tests are whether or not the action which provoked the assault was, under the circumstances, such as would be acceptable of a professionally competent policeman, and whether or not such action, under the circumstances, would incite the anger of a person of ordinary emotional stability. If the answer to the first question is "No" while the answer to the second is "Yes", the probable and natural consequences will be held to be the conduct of the policeman. If, however, the answer to the first question is "Yes" or if the answer to the second question is "No", the policeman's action will not be held to justify conduct calculated to be, or reasonably likely to be offensive to him or to incite others to be offensive to him.

As previously mentioned, the utterances of a person may or may not be disorderly conduct, depending upon the surrounding circumstances. I have concluded that the raid was illegal. The majority defends the police action upon the possibility that they either had a search warrant or probable cause to make a warrantless search. There is nothing in the record from which either can be found or inferred, and neither may be presumed. When the police went, as they did, to investigate or raid the premises, they could not expect to be accorded the hospitality of honored guests. They are presumed to be professionally competent and are therefore presumed to know that having entered upon the premises for such purpose, without legal authority, they could remain or proceed only by consent. Their actions clearly transgressed the boundaries of acceptable police action. From the beginning it was apparent that such consent would not be forthcoming, and they should have left, as would have any self-respecting door-to-door peddler greeted in similar fashion. Obviously the defendant was offensive and obnoxious, both before and after the arrest. Under certain circumstances he has a constitutional right to be; and in a sense this is unfortunate, for the evidence indicates that he exercises it copiously. Nevertheless, if we are to continue our

concept of personal freedoms, it is inevitable that there will always be those who abuse them.

Test No. 1 having been determined in favor of the defendant, we turn to Test No. 2, i.e., whether or not the improper police action was such as would, under the circumstances, incite the anger of a person of ordinary emotional stability, and I think the trial court could not but find that it would. Applying these standards, I would hold that the conduct of the defendant, reprehensible as it was, was improperly provoked by the police and that the undesirable results were thus chargeable to the police, rather than to him.

DeBruler, J., concurs.

NOTE.—Reported in 269 N. E. 2d 149.