GREGORY HESS *v.* STATE OF INDIANA.

[No. 1271S372.  Filed May 22, 1973.]

*F. Thomas Schornhorst, David Colman,* of Bloomington, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

GIVAN, J.—This is an appeal by Gregory Hess from a conviction for disorderly conduct. Hess was tried in City Court of Bloomington without a jury and found guilty. He ap-

pealed and the cause was transferred to the Monroe Superior Court for a trial *de novo*. The cause was submitted upon stipulated facts. Hess was again found guilty and assessed a fine of one dollar.

The stipulation to the evidence discloses the following:

Early in the afternoon of May 13, 1970, units of the Monroe County Sheriff's Department and the Bloomington City Police were summoned to aid Indiana University officials and campus police in removing certain demonstrators who had been blocking the doors of Bryan Hall in conjunction with protests against the war in Indochina. At that time there were some 200 to 300 persons assembled in front of the Hall. In the course of the police activity, two of the demonstrators were placed under arrest and put in a patrol car, at which time 100 to 150 of the persons present went into the street in front of the Hall in an effort to block the progress of the patrol car. It was then necessary for the police officers to clear the street of such persons to permit the passage of the car. When they did not respond to the verbal directions of the police, it was necessary for the officers to forcefully remove the persons from the street.

While in the process of removing the demonstrators from the street, Monroe County Sheriff Thrasher heard appellant say in a loud voice, while in a position with his back to the police and facing the bulk of the demonstrators, one of the following two phrases: "We'll take the fucking street later," or "We'll take the fucking street again." Two female witnesses heard appellant use the phrase in a loud voice but testified that he did not appear to be exhorting the crowd to go back into the street.

Appellant first argues that IC 1971, 35-27-2-1, BURNS' IND. STAT. ANN., 1972 Supp., § 10-1510, is unconstitutional as applied in this case. The statute in question provides as follows:

"Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultuous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct, and upon conviction, shall be fined in any sum not exceeding five hundred dollars [$500] to which may be added imprisonment for not to exceed one hundred eighty [180] days. [Acts 1943, ch. 243, § 1, p. 685; 1969, ch. 161, § 1, p. 329.]"

It is appellant's contention that as he was exercising his right of free speech, the statute cannot be applied to him, unless his speech: (1) is obscene within the standard of *Roth* v. *United States* (1957), 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498; (2) amounts to fighting words within the meaning of *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031; (3) amounts to a public nuisance in that privacy interests are invaded; or (4) advocates law violation or use of force and is directed to produce imminent lawless action and is likely to do so. *Cohen* v. *California* (1971), 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284.

Focusing on the last of these criteria, appellant argues that the State did not show a "clear and present danger" of violence. *Terminiello* v. *City of Chicago* (1949), 337 U.S. 1, 69 S. Ct. 894, 93 L. Ed. 1131. The Supreme Court has recently revised its formula for determining when a statute infringes upon the right of free speech. In *Brandenburg* v. *Ohio* (1969), 395 U.S. 444, 447-448, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430, 434, the Court said:

"[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."

In *Whited* v. *State* (1971), 256 Ind. 386, 269 N. E. 2d 149, 152, 25 Ind. Dec. 438, 442, this Court followed a similar concept requiring a "tendency to lead to violence."

In the case at bar, in light of the immediately preceding illegal conduct of the group in blocking traffic, the calling in a loud voice to those already emotionally upset that they will repeat the same illegal acts of blocking traffic is certainly a threat and a challenge to fight the police who are then in the street attempting to maintain order. The statement of appellant surpassed the theoretical advocation of violence, *Noto* v. *United States* (1961), 367 U.S. 290, 81 S. Ct. 1517, 6 L. Ed. 2d 836. The trial court was justified in finding that the statement was intended to incite further lawless action on the part of the crowd in the vicinity of appellant and was likely to produce such action.

Appellant also argues that the record is devoid of any evidence that could serve to bring appellant's conduct within any permissible application of the statute. In this argument appellant contends that: (1) he spoke no more loudly than others at the scene; (2) the neighborhood was disturbed before he spoke; (3) his words were not offensive; and (4) his language did not constitute "fighting words." That others were acting in a loud manner and that the area was already disturbed are of no import. The participation of others relates only to their guilt, not to the appellant's. Although the vocabulary appellant used was tasteless and moronic, it has nothing to do with whether the evidence shows disorderly conduct. If the word is stricken from the evidence, the record still abundantly supports the finding of the trial court. As above noted under the circumstances, the trial court was justified in finding that appellant's statement did violate the statute.

Appellant next argues that IC 1971, 35-27-2-1, BURNS' IND. STAT. ANN., 1972 Supp., § 10-1510, is unconstitutional as overboard and vague. Although the doctrines are often joined in discussion, they are distinct. This Court has previously held that a statute is not unconstitutional as vague if it is capable of intelligent construction

and interpretation by persons who possess only ordinary comprehension, if its language conveys an adequate description of the prohibited evil. *Stanley* v. *State* (1969), 252 Ind. 37, 245 N. E. 2d 149, 16 Ind. Dec. 662. Words such as "loud," "unusual," and "offensive" are relative terms and are to be interpreted by an ordinary man under the circumstances with which he is faced. See *Whited* v. *State* (1971), 256 Ind. 386, 269 N. E. 2d 149, 25 Ind. Dec. 438. The statute must be construed as a whole; the words cannot be seen to exist in a vacuum. *Cheaney* v. *State* (1972), 259 Ind. 138, 285 N. E. 2d 265, 32 Ind. Dec. 42. In the case at bar we have already pointed out that the appellant clearly brought himself within the statute in that his speech and conduct was offensive behavior, threatening, traducing and challenging the police officers. Other conduct such as the uttering or causing of loud and unusual noises must be such as to disrupt the peaceful character of the neighborhood to an extent that it becomes a public nuisance. With the above in mind, it cannot be said that an ordinary individual would not have fair notice as to what is permissble or not permssible under the statute.

A penal statute is overbroad if its sanctions are applicable to activities that are protected by the constitution. *Grody* v. *State* (1972), 257 Ind. 651, 278 N. E. 2d 280, 29 Ind. Dec. 214. Appellant argues that his right to free speech is curtailed by the statute in question. This Court has previously held, however, that in cases of pure speech, this statute can only be applied if the speech has a tendency to lead to violence. *Whited, supra; Miller* v. *State* (1972), 258 Ind. 79, 279 N. E. 2d 222, 29 Ind. Dec. 398. Thus interpreted, the statute does not infringe upon the right to free speech, and is not overbroad.

Appellant lastly argues that the form affidavit used failed to give him notice of the charge against him. Appellant filed a motion to quash in the city court where it was overruled. Apparently, a new motion to quash was not filed in Superior

Court. The record does show as part of the Statement of the Case on Appeal from City Court the following:

"The issues raised on this appeal are as follows: 1. Whether the judge of the City Court erred in overruling defendant's motion to quash the affidavit. . . ."

The Superior Court did not understand that statement to serve as a refiling, apparently, for there is no ruling on the motion. Appeals from justice of the peace courts and city courts to the circuit or superior courts have long been recognized as trials *de novo*. They are not a review of the proceedings had before the inferior court. *Hensley* v. *State* (1969), 251 Ind. 633, 244 N. E. 2d 225, 16 Ind. Dec. 479. Thus, no issue is presented for this Court's consideration.

The trial court is affirmed.

Arterburn, C.J., concurs; Prentice, J., concurs with opinion in which DeBruler, J., concurs; Hunter, J., dissents with opinion.

CONCURRING OPINION

PRENTICE, J.—Although I dissented in the case of *Whited* v. *State* (1971), 256 Ind. 386, 269 N. E. 2d 149, my dissatisfaction therein was not with the statement of the law by the majority but rather with its application to the facts of that particular case. In the case at bar, the evidence discloses to me that the conduct of the appellant was illegal, as tested by the standards of that case and also by the "clear and present danger" test of *Brandenburg* v. *Ohio* (1969), 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 and *Terminiello* v. *Chicago* (1949, 337 U.S. 1, 69 S. Ct. 894, 93 L. Ed. 1131 and the "immediate threat" test of the most recent case of *Gooding* v. *Wilson* (1972), 405 U.S. 518, 31 L. Ed. 2d 408. The acts or words complained of must be viewed within the context of the circumstances that surrounded them. "The probable and natural consequences of the conduct is the important element." *Whited* v. *State* (Dissenting Opinion) *supra*, citing *State* v.

*Korich* (1949), 219 Minn. 268, 17 N. W. 2d 497. The crowd was volatile and the police officers under stress.

"Thus, when a policeman is in the proper performance of his duty and another by conduct set forth in the statute and which is calculated to be, or is reasonably likely to be offensive to him, such conduct would be disorderly within the intent of the statute, if it is probable and natural that the consequences will be to divert or interfere with or limit his effective functioning and thereby create, contribute to, or foster the continuance of a disturbance to the peace and quiet of any neighborhood or family. While it is to be hoped that, among other desirable qualities, our policemen will have an extraordinarily high degree of emotional stability, we nevertheless are not justified in presuming such. We will remember that they labor under difficult and often exasperating circumstances, and we cannot ascribe to them a tolerance or boiling point higher than that of the ordinary man. Further, we have a right to expect him to be professionally competent and will presume him to be so. Therefore, if he clearly oversteps the boundaries of proper police action, he will be presumed to have done so with knowledge of the same and a wilful disregard of the rights and sensitivity of the assailed. Under such circumstances, he as the offender, is entitled to no greater degree of civility than any other person and responsible for the probable and natural consequences. This is not to say that every miscue of a policeman will justify provocative conduct by the person thereby offended or inconvenienced. The tests are whether or not the action which provoked the assault was, under the circumstances, such as would be acceptable of a professionally competent policeman, and whether or not such action, under the circumstances, would incite the anger of a person of ordinary emotional stability. If the answer to the first question is 'No' while the answer to the second is 'Yes', the probable and natural consequences will be held to be the conduct of the policeman. If, however, the answer to the first question is 'Yes' or if the answer to the second question is 'No', the policeman's action will not be held to justify conduct calculated to be, or reasonably likely to be offensive to him or to incite others to be offensive to him." *Whited* v. *State* (Dissenting Opinion) *supra*, 269 N. E. 2d at 155.

As to the majority's view, as written by Justice Givan, I believe that a trial de novo is not a review of the proceedings

had before the lower court, but there is yet another reason to deny relief upon the issue of the sufficiency of the affidavit. Even if, as urged by Appellant, the motion to quash was before the trial judge, he did not rule upon it; and we cannot assume that it was considered and overruled. By proceeding without a ruling and without protest, Appellant waived any error that might otherwise have been averted. *Chustak et al.* v. *Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 288 N. E. 2d 149; *Barnes* v. *State* (1971), 255 Ind. 674, 266 N. E. 2d 617; *Wilhoite* v. *State* (1971), 255 Ind. 599, 266 N. E. 2d 23; *Brown* v. *State* (1970), 255 Ind. 47, 262 N. E. 2d 515.

DeBruler, J., concurs.

### DISSENTING OPINION

HUNTER, J.—I must respectfully dissent. Neither my reading of the facts nor my understanding of First Amendment, and cases interpreting the First Amendment, coincide with that of the majority.

First, it is necessary to state where I believe the majority has misconstrued the record. The majority states that when the demonstrators failed to clear the street at the verbal direction of the police, it was necessary for the officers to *forcefully* remove them. However, there is no indication in the record that physical force was required. The record does say, and I quote:

> "When they [the demonstrators in the street] did not respond to verbal directions, Sheriff Thrasher and his deputies began walking north on Indiana Avenue from 4th Street toward Kirkwood Avenue to clear the street for automobile traffic. The persons who were in the street then moved to the curbs on either side of Indiana Avenue, joining the large number of spectators that had gathered along both sides of the street."

Neither in this statement nor anywhere else in the record is there *any* evidence that the police were required to use force to clear the street.

The majority goes on to say that appellant was arrested when the sheriff heard him say either: "We'll take the fucking street later," or "We'll take the fucking street again." However, the record says:

"According to Sheriff Thrasher, he heard Hess use the word "fuck" in a loud voice and he immediately arrested him for disorderly conduct. He said that this was the first time he had heard that word used on the particular occasion."

Although it was later established in court that appellant did say one of the above described phrases, there is no evidence in the record that the officers heard the entire phrase. The evidence shows only that Sheriff Thrasher heard appellant use the offensive word and arrested appellant for using that offensive word. The evidence showed that others were using similarly distasteful modifiers, but that the people in the crowd were not offended by the foul language.

As to the law, the majority is confused. They state that *Brandenburg* has modified the "clear and present danger" test established in *Terminiello*. A reading of the two tests indicates that they are practically synonomous. *Brandenburg* protects the advocacy of law violation "except where such advocacy is directed to inciting or producing *imminent* lawless action and is likely to incite or produce such action." (Emphasis added) 395 U.S. at 447. The word "imminent" is defined as "ready to take place; near at hand; impending; hanging threateningly over one's head; menacingly near." Webster's Third International Dictionary. It thus seems clear that *Brandenburg* did not modify the "clear and present danger" test, but merely stated it another way.

The majority then holds that the test established in *Whited* (with pure speech there must be a "tendency to lead to violence") is the same test as *Brandenburg*. This is simply not the case. *Brandenburg* would require that the speech be likely to lead to imminent or immediate violence. Requiring only a tendency and not requiring some immediate threat fails

to meet the constitutional standards established in *Gooding* v. *Wilson* (1972), 405 U.S. 518, 31 L. Ed 2d 408, the United States Supreme Court's latest statement in this area. The Court there affirmed its acceptance of the standard established in *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568, 572, that constitutionally unprotected words are only "those which by their very utterance inflicted injury or tend to incite an *immediate* breach of the peace. 405 U.S. at 522, 31 L. Ed. 2d at 414. The Court went on to say at another point, "[H]ow infinitely more doubtful and uncertain are the boundaries of an offense including any 'diversion *tending* to a breach of the peace' . . ." (Emphasis supplied in *Gooding*), 405 U.S. at 525, 31 L. Ed. 2d at 417. At the very least, constitutionally unprotected speech must be limited to words which have a tendency to lead to immediate violence or immediate unlawful activity.

The majority characterizes the words of the appellant as being a challenge to fight the police. The majority thus seems to be saying that these are "fighting words" under the doctrine established in *Chaplinsky* v. *New Hampshire, supra.* However, the evidence shows that appellant had his back to the policeman and his statement was not directed at anyone in particular. Sheriff Thrasher testified that he was offended by Hess, but did not interpret the expression as being directed personally at him.

The other apparent basis for the majority's holding is that appellant's statement was intended to incite further lawless actions on the part of the crowd. Under *Brandenburg* the speaker must intend to incite *imminent* lawless action and the words must be lively to incite *imminent* lawless action. Nothing in the record indicates that either of these elements was present. In fact, there is uncontroverted evidence demonstrating the opposite. The evidence shows that appellant was *not* exhorting the crowd and that his statement was *not* addressed to any particular person or group. The record contains no evidence that Sheriff Thrasher felt threatened or

considered lawless action to be imminent. The *only* evidence is that Sheriff Thrasher was offended, and the fact that a police officer is offended is constitutionally insufficient to support a conviction. *Coates* v. *City of Cincinnati* (1971), 402 U.S. 611. Even if it were held that the appellant intended to incite the crowd, there is still no evidence that lawless action would occur immediately, as the people in the crowd did not consider it an exhortation. It is clear that neither element of the *Brandenburg* test is met. The evidence shows that the phrase was not intended to incite the crowd, and the evidence does not indicate that imminent lawless action was likely to result from the speech in question. Nor does the phrase used meet the test established in *Gooding* v. *Wilson*—the words could not be considered "fighting words" and were not likely to lead to *immediate* violence. There is thus no constitutional basis for appellant's conviction, and the statute has been unconstitutionally applied to appellant's speech.

It should also be noted that the Superior Court judge based his finding of guilty upon his conclusion that appellant's speech would have a "tendency to lead to violence." He was apparently basing this on the test established in *Whited*. I do not criticize the judge, because, at that time, *Whited* was the latest statement of the law. However, as noted hereinbefore a mere tendency to lead to violence is not sufficiently narrow to prevent intrusion upon constitutionally protected free speech. *Gooding* v. *Wilson, supra.* The trial judge did not find that the words would likely lead to *immediate* violence. If the majority is merely affirming the finding of the trial judge, they are affirming an unconstitutional standard. If the majority is holding that the words were likely to lead to immediate violence or immediate lawless activity, they are going beyond the finding of the trial court and making a holding which the record simply will not support.

The majority attempts to narrow the statute to prevent problems of vagueness and overbreadth.

A basic principle of due process is that a statute's prohibitions be clearly defined. We assume that persons are free, and able to steer between lawful conduct and unlawful conduct. Laws therefore must give people of ordinary intelligence reasonable warning of what actions are proscribed so that they may act accordingly. Laws must provide explicit standards in order to prevent arbitrary and discriminatory application of the law. A vague law improperly delegates basic policy matters to policemen, judges, and juries to be resolved on an *ad hoc* and subjective basis with the very real possibility of arbitrary application. Where a statute concerns fundamental First Amendment rights, there is an additional concern as to whether a vague statute might tend to inhibit the exercise of those rights. Uncertain meanings will often cause citizens to steer wider of the boundaries of the prohibitions than they would if those boundaries were clearly defined. In this way, lawful exercise of free speech can be severely dampened. See *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222.

Although distinct, the concept of overbreadth is somewhat related to vagueness in that an overly broad statute infringes upon an individual's right to free speech protected by the First Amendment in much the same way as does a vague statute. There are two different problems with an overly broad statute. First, it invites arbitrary application by law enforcement officials, and secondly, it can have the effect of discouraging the exercise of free speech, free movement and assembly. See *Coates* v. *City of Cincinnati, supra.*

The fact that the statute on its face might appear overly broad does not immediately make the statute unconstitutional. The United States Supreme Court has urged state courts to give narrowing constructions to statutes which might otherwise invade protected rights. See *Gooding* v. *Wilson, supra,* 405 U.S. at 518, 31 L. Ed. 2d at 413. We therefore can narrow the application of the statute without holding it unconstitutional.

The majority attempts to narrow the statute to prevent problems of vagueness and overbreadth. The statute is limited in the area of pure speech to speech which is so loud as to become a public nuisance, or speech which has a tendency to lead to violence. I must question whether "causing of loud and unusual noises . . . such as to disrupt the peaceful character of the neighborhood to an extent that it becomes a public nuisance," makes the statute any less vague. I question whether this language provides a defendant fair warning of what actions are proscribed. One still has no idea what level of noise is or is not permissible and also has no idea how the standard will vary with differing "neighborhoods." If the disorderly conduct statute before us is to also act as an "anti-noise" statute, it must at the very least be restricted to some specified "neighborhood" such as a school. See *Grayned* v. *City of Rockford, supra.* In *Grayned,* the United States Supreme Court was faced with the following anti-noise ordinance:

> "[N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof . . ." 408 U.S. at 107, 33 L. Ed. 2d at 227.

When determining whether this ordinance was vague, the United States Supreme Court said:

> Although the question is close, we conclude that the anti-noise ordinance is not impermissibly vague. The court below rejected appellant's arguments 'that proscribed conduct was not sufficiently specified and that police were given too broad a discretion in determining whether conduct was proscribed.' 46 Ill. 2d 492, 494 (1970). Although it referred to other, similar statutes it had recently construed and upheld, the court below did not elaborate on the meaning of the anti-noise ordinance. In this situation, as Justice Frankfurter put it, we must 'extrapolate its allowable meaning.' Here, we are 'relegated to the words of the ordinance itself,' to the interpretations the court below has given to analogous statutes, and, perhaps to some degree, to the interpretation of the statute given by those charged

with enforcing it. 'Extrapolation,' of course, is a delicate task, for it is not within our power to construe and narrow state laws.

"With that warning, we find no unconstitutional vagueness in the anti-noise ordinance. Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' Esteban v. Central Missouri State College, 415 F. 2d 1077, 1088 (CA 8 1969) (Blackmum, J.) cert. denied, 398 U.S. 965 (1970), but we think it is clear what the ordinance as a whole prohibits. Designed, according to its preamble, 'for the protection of Schools,' the ordinance forbids deliberately noisy or diversionary activity which disrupts or is about to disrupt normal school activities. It forbids this willful activity at fixed times—when school is in session—and at a sufficiently fixed place—'adjacent' to the school. Were we left with just the words of the ordinance, we might be troubled by the imprecision of the phrase 'tends to disturb.' However, in Chicago v. Meyer, 44 Ill. 1, 4 (1969), and Chicago v. Gregory, 39 Ill. 2d 47 (1968), reversed on other grounds, 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946 (1969), the Supreme Court of Illinois construed a Chicago ordinance prohibiting, inter alia, a 'diversion tending to disturb the peace,' and held that it permitted conviction only where there was *imminent* threat of violence.' (Emphasis supplied.) See Gregory v. Chicago, 394 U.S. 111, 116-117, 121-122, 22 L. Ed. 2d 134, 138, 139, 141, 142, 89 S. Ct. 946 (1969) (Black, J., concurring). Since Meyer was specifically cited in the opinion below, and it in turn drew heavily on Gregory, we think it proper to conclude that the Supreme Court of Illinois would interpret the Rockford ordinance to prohibit only actual or imminent interference with the 'peace or good order' of the school.

"Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted. *We do not have here a vague, general 'breach of the peace' ordinance, but a specific statute for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this 'particular context' the ordinance gives 'fair notice to*

*whom [it] is directed.'"* 408 U.S. at 109-110, 33 L. Ed. 2d at 228-230 (emphasis added in final paragraph). (Footnotes omitted)

The reason the ordinance was upheld was because it was tied directly to schools and was not a general and inadequately limited breach of the peace statute. The Court noted trouble with "tends to disturb" but permitted the language because Illinois will convict only where there is an "imminent threat of violence." From a reading of *Gooding* v. *Wilson, supra,* and *Grayned* v. *City of Rockford, supra,* it is clear that the majority in the case at bar has failed to sufficiently narrow the statute. The anti-noise interpretation is both too vague and too broad. It does not sufficiently warn a person what actions are proscribed. It invites arbitrary enforcement and infringes upon constitutionally protected free speech. Since the sheriff arrested appellant for using offensive language and not because of any threat of violence, it is clear that the statute was arbitrarily applied by law enforcement officials in this case. In both *Gooding* and *Grayned,* the Court indicated that a mere tendency to lead to violence was not a sufficient narrowing of a breach of the peace statute. Subsequent to *Gooding* v. *Wilson, supra,* the Supreme Court of the United States has, in memorandum opinions, reversed five cases with holdings similar to that of the majority. *Gooding* was the basis for reversal in each instance. See *Cason* v. *City of Columbus* (1972), 409 U.S. 1053, 34 L. Ed. 2d 507; *Martin* v. *City of New Orleans* (1972), 409 U.S. 944, 34 L. Ed. 2d 214; *Brown* v. *Oklahoma* (1972), 408 U.S. 914, 33 L. Ed. 2d 326; *Lewis* v. *City of New Orleans* (1972), 408 U.S. 913, 33 L. Ed. 2d 321; *Rosenfeld* v. *New Jersey* (1972), 408 U.S. 901, 33 L. Ed. 2d 321. In order to avoid arbitrary enforcement and intrusion upon protected free speech, such a statute cannot punish pure speech unless it is likely to lead to *imminent* lawless action. As interpreted by the majority, the disorderly conduct statute remains both overly vague and

overly broad in violation of the First and Fourteenth Amendments of the Constitution of the United States.

The majority then asserts that any question as to the sufficiency of the affidavit has been waived. The only apparent basis for this is that the Superior Court judge did not rule on the appellant's Motion to Quash. As the majority notes, the record before the Superior Court judge contained the following statement:

"The issues raised on this appeal are as follows: 1. Whether the judge of the Circuit Court erred in overruling defendant's motion to quash the affidavit. . . ."

Admittedly this was not an "appeal' as such, but the State refiled the affidavit in the Superior Court, using exactly the same words with no amendments, so that it would seem clear that appellant was continuing his challenge to the sufficiency of the affidavit. Other matters in the record unequivocally demonstrate that appellant intended to be challenging the affidavit by means of a Motion to Quash. The record contains the following:

"Prior to the entry of his plea of not guilty in the City Court, the defendant filed a motion to quash the affidavit on the ground that it failed to charge the offense with sufficient certainty, and on the ground that the disorderly conduct statute (hereinafter cited as Section 10-1510) is unconstitutional on its face. A copy of *this motion to quash the affidavit and the supporting memorandum are attached and made a part of this record.*" (Emphasis added)

The judge never ruled upon the Motion to Quash, but simply entered judgment against the appellant on July 19, 1971. Since the case was tried upon stipulated facts, no hearing was held in Superior Court. On July 22, 1971, appellant filed a Motion for Clarification of Judgment which contained the following:

"At no time in these proceedings has the State responded substantively to the points made by the defendant, and

*neither the City Court nor this Court has offered any reasons for finding that the State's pleading was legally sufficient;* that the disorderly conduct statute is constitutional on its face; and that the said statute was applied constitutionally in the instant case.

"The clarification hereby requested is important to counsel's preparation of a motion to correct errors and any subsequent appeal that may become necessary.

"Counsel would welcome the Court's advice as to the basis upon which this conviction was upheld in light of the authorities discussed in the memoranda filed herein and in light of the absence of authority offered by the State or by this Court for sustaining the conviction herein." (Emphasis added)

The Superior Court judge did not respond to this motion, and on September 16, 1971, appellant filed his Motion to Correct Errors which stated in part:

"The Court committed error in overruling defendant's Motion to Quash the Affidavit for Disorderly Conduct. The said motion challenged the affidavit on the grounds that it did not state the offense with sufficient certainty; . . . ."

No one can doubt that appellant was continuing his objection to the affidavit, especially in light of the fact that the words of the affidavit were unchanged when it was refiled. Appellant made his Motion to Quash a part of the record before the Superior Court which would seem to me to be substantially the same as refiling his Motion to Quash. He followed that by requesting a ruling on the sufficiency of the pleadings on at least two occasions. I am of the opinion that the question was properly before the Superior Court and is now properly before this Court. I would answer appellant's contention on the merits.

The affidavit in this case is insufficient. The initial "multiple choice" affidavit filed in City Court in Bloomington was as follows: (See following page)

444

STATE OR INDIANA ⎫
                  ⎬ SS:
COUNTY OF MONROE ⎭

OF THE CITY OF
BLOOMINGTON
Affidavit For
~~Public Intoxication~~
Disorderly Conduct
~~Assault and Battery~~
~~Child Neglect~~
~~Resisting Arrest~~

THE STATE OF INDIANA
        VS.        Cause No. 702219
    Gregory Hess

(STRIKE OUT PARTS          NOT APPLICABLE)
The undersigned, being duly sworn on oath, on information and belief, says that at and in the County of Monroe and State of Indiana, to wit: 100 block of S. Indiana Ave. on the 13th day of May, 1970, one Gregory Hess, late of said County, did then and there unlawfully:

☐ commit the offense of intoxication in public places by being found in a public place and a place of public resort in a state of intoxication,

☒ act in a loud, boisterous, and disorderly manner so as to disturb the peace and quiet of the (household) and (neighborhood) in and around the aforementioned place by loud and unusual noise, and by tumultous and offensive behavior, threatening, traducing, quarreling, challenging to fight and fighting

☐ touch, beat, and strike the person of one _____ in a rude, insolent, and angry manner,

☐ and wilfully fail and neglect to furnish necessary food, clothing, shelter, and medical attention to his minor children (being boys under the age of 16 years and girls under the age of 17 years), to wit:
_____
said defendant being the father thereof and able to furnish such support,

☐ forcibly assault, resist, oppose, obstruct, impede, and interfere with a police officer while such officer was arresting
_____
contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Indiana.

Affiant: Howard Wile

Subscribed and sworn to before me this 14th day of May, 1970.
State's Witnesses:    Sheriff, Thrasher

Douglas R. Bridges
Deputy Prosecuting Attorney
Approved by:
Douglas R. Bridges
Deputy Prosecuting Attorney

This affidavit would be defective for the same reasons that the Uniform Traffic Ticket was held to be defective in *Watt* v. *State* (1968), 249 Ind. 674, 234 N. E. 2d 471. Appellant, however, did not attack the affidavit on this basis and his arguments are equally applicable to both affidavits. The affidavit filed in Superior Court, which used the same language as the initial affidavit, reads as follows:

"The undersigned, being duly sworn on oath, on information and belief, says that at and in the County of Monroe and State of Indiana, to-wit: 100 block of South Indiana Avenue, on the 13th day of May, 1970, one Gregory Hess, late of said County, did then and there unlawfully act in a loud, boisterous and disorderly manner so as to disturb the peace and quiet of the household and neighborhood in and around the aforementioned place by loud and unusual noise, and by tumultuous and offensive behavior, threatening, traducing, quarreling, challenging to fight and fighting contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Indiana."

An accused has a constitutional right to be given adequate notice of the charges against him. Art. 1, § 13, Constitution of Indiana. In *Taylor* v. *State* (1957), 236 Ind. 415, 418, 140 N. E. 2d 104, 106, this Court stated:

"[I]t is the well established rule in this state that the particular crime with which the defendant is charged must be shown with such reasonable certainty, by express averments as will enable the court and jury to distinctly understand what is to be tried and determined, and to fully inform the defendant of the particular charge which he is required to meet. The averments must be so clear and distinct that there may be no difficulty in determining what evidence is admissible thereunder."

In *Loveless* v. *State* (1960), 240 Ind. 534, 539, 166 N. E. 2d 864, 866, Chief Justice Arterburn stated:

"[A] defendant is entitled to be informed *specifically* of the crimes charged and not come to trial in the dark and uninformed as to the nature of the evidence to be presented against him." (Emphasis added)

Ordinarily an affidavit is sufficient if it follows the words of the statute defining the crime. *However, if the crime is defined in general terms, the affidavit or indictment must specify the particular acts which were done by the accused.* McNamara v. State (1932), 203 Ind. 596, 181 N. E. 512. There can be little doubt that the disorderly conduct statute defines the crime in general terms. The statute can be read to define at least *forty-eight* different offenses.[1] Upon reading the affidavit it appears that appellant was charged with committing all forty-eight variations of the crime of disorderly conduct. However, there is absolutely no description of the acts which constituted this amazing feat. One must ask

---

1. This may be illustrated by taking all the disjoined words in the statements of the elements of disorderly conduct and substituting them in sequence.

| I (manner) | II (disturb peace and quiet of) | III (by) |
|---|---|---|
| 1. Loud | family | loud noise |
| 2. Loud | Loud | unusual noise |
| 3. Loud | neighborhood | loud noise |
| 4. Loud | neighborhood | unusual noise |
| 5. Loud | family | tumultuous behavior |
| 6. Loud | neighborhood | tumultuous behavior |
| 7. Loud | family | offensive behavior (threatening) |
| 8. Loud | neighborhood | offensive behavior (threatening) |
| 9. Loud | family | offensive behavior (traducing) |
| 10. Loud | neighborhood | offensive behavior (traducing) |
| 11. Loud | family | offensive behavior (quarreling) |
| 12. Loud | neighborhood | offensive behavior (quarreling) |
| 13. Loud | family | offensive behavior (challenging to fight) |
| 14. Loud | neighborhood | offensive behavior (challenging to fight) |
| 15. Loud | family | offensive behavior (fighting) |
| 16. Loud | neighborhood | offensive behavior (fighting) |

If "boisterous" and "disorderly" are substituted for "loud," forty-eight combinations will appear.

whether appellant's behavior was tumultuous. Did he traduce? Did he quarrel? Did he fight? One might say he did disturb some unnamed neighborhood, but who was the family he disturbed?

Appellant was arrested for saying the word "fuck" and so he probably assumed that this would be the act he would have to defend against. In the course of both trials, the appellant sought a clarification of exactly what the State thought were the acts he committed which constituted the offense. Finally, after both trials were completed and appellant had filed his Motion to Correct Errors, the Superior Court judge stated that the phrase, "We'll take the fucking street later [or again]," had "a tendency to lead to violence" regardless of the foul language. To discover the basis for the prosecution only after the trial is completed is both unfair and unconstitutional.

Appellant's conduct has been admitted by all to constitute pure speech. We had previously held in *Whited* that for pure speech to be disorderly conduct it had to have a tendency to lead to violence. Thus, in appellant's case the allegation that his words would have a tendency to lead to violence would be an essential element of the crime. An accused has the right to have all the essential elements of the offense charged in the affidavit. *McCormick* v. *State* (1954), 233 Ind. 281, 119 N. E. 2d 5; *Borton* v. *State* (1952), 230 Ind. 679, 106 N. E. 2d 392. The affidavit before us is therefore defective and subject to a Motion to Quash for failure to state all the essential elements of the crime.

On the basis of the objections to the affidavit alone, the cause should be reversed and remanded with *proper* limiting standards placed upon the statute.

In conclusion, although I might find other limiting standards more reasonable, it seems to me we should feel compelled to apply the minimum constitutional standards established by the Supreme Court of the United States. We should not stretch the facts beyond those in the record to fit some nebulous stand-

ard which will not meet constitutional muster. Even if the majority does not hold that the evidence requires a reversal, it should at least narrow the statute within the constitutional guidelines established by the Supreme Court of the United States.

NOTE.—Reported in 297 N. E. 2d 413.