Mark Allen MARTIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 64A03-8602-CR-39.

Court of Appeals of Indiana,
Third District.

Oct. 30, 1986.

Scott L. King, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

A jury found Mark Allen Martin guilty of Disorderly Conduct[1] and Public Intoxication,[2] both class B misdemeanors. In his appeal, Martin challenges the sufficiency of evidence to support each conviction.[3]

We affirm.

On July 15, 1984, Martin attended a picnic held by the Gary Ski Club at the Midwest Steel Supervisor's Club (MSSC) in Porter County, Indiana. At about 4:00 p.m., Martin and about one hundred other members of the ski club were in the area of MSSC's pool. MSSC officials testified that there appeared to be "an unlimited supply" of alcoholic beverages available.

Steven Brolsma, head lifeguard for MSSC, saw Martin chasing a woman around the pool. Brolsma told Martin to stop running, and Martin complied. Thereafter, on several occasions, Brolsma told Martin to stop pushing people into the pool. Finally, Brolsma told Martin that if he would not follow pool rules, which were posted, he would have to leave the pool area. Martin apparently refused to comply with the rules, and told Brolsma to "go ahead and call security." Brolsma summoned Paul Neely, a Midwest Steel security officer.

When Neely arrived at the pool, police officers Thomas Meade and Robert Trowbridge, whom Neely had summoned, were already there. Brolsma pointed out Martin, who had gone to watch a volleyball game. The men approached Martin and Neely asked him, "What seems to be the problem?" Martin replied that he had no problem. Martin's speech was slurred, his eyes were bloodshot, he was unsteady, and he smelled of beer. Neely told Martin that if he created another disturbance, he would be "speaking to the officers." Martin responded in a loud voice, "Let the smartasses arrest me." By this time twenty to thirty people had gathered around Martin, Neely, Brolsma, Meade, and Trowbridge. Officer Trowbridge told Martin to "calm down," and that they only wanted to talk to him. Officer Meade told Martin that if he continued to act in a disorderly manner, he would be arrested for disorderly conduct. Martin then turned to Neely and, in a very loud voice, said, "Go ahead and have the smartasses arrest me." Officer Meade then arrested Martin. After Martin was taken to the Portage Police Department he was given sobriety tests, which he failed.

## I.

### Disorderly Conduct

Martin first challenges the sufficiency of evidence supporting his conviction for disorderly conduct. Our well-established standard of review allows us to consider

---

1. Ind.Code 35–45–1–3.

2. Ind.Code 7.1–5–1–3.

3. Martin expressly waives other issues raised in his motion to correct errors.

only the evidence favorable to the State, together with reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt, we must affirm. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

■ To convict for disorderly conduct, the trier of fact must find that there was unreasonable noise, followed by an admonition to stop, which was in turn followed by more unreasonable noise. Ind.Code 35–45–1–3; *Cavazos v. State* (1983), Ind.App., 455 N.E.2d 618, 619. Martin argues that the evidence is insufficient to show either that he made unreasonable noise or that he was admonished to stop.

### A.

### *Unreasonable Noise*

Martin relies on *Cavazos* to argue that mere high volume near a volleyball court in an outdoor picnic areas does not constitute unreasonable noise. Martin misreads *Cavazos* and mischaracterizes the facts.

In *Cavazos*, the defendant's brother was involved in a fight. When a police officer attempted to arrest her brother, the defendant (Teresa) "debated" with the officer about the arrest and called the officer an "asshole." The officer told her to be quiet but she continued, in the officer's words, to "debate it." 455 N.E.2d at 619. He then arrested her for disorderly conduct.

Martin ignores the discussion of "public nuisance speech" in *Cavazos*. The court stated:

> The evidence reveals Teresa's speech was "loud" both before and after she was asked to be quiet. However, the evidence is insufficient to support the finding Teresa was making *unreasonable* noise. Evidence of loudness, standing by itself, does not constitute evidence of unreasonable noise in the public nuisance sense. Loudness may be unreasonable, but that determination may be made only in the context of the surrounding circumstances. Here, the only evi-

dence of the surrounding circumstances is the existence of confusion created by her brother's scuffle and the setting of a tavern with a band approximately fifty feet away from the incident. There is no evidence Teresa was speaking any louder than anyone else, or louder than was necessary to be heard under the circumstances.

455 N.E.2d at 621 (original emphasis). Therefore, the court reversed her conviction for disorderly conduct.

Thus, if the present record contains evidence that Martin spoke louder than anyone else, or louder than necessary to be heard under the circumstances, *Cavazos* would be distinguishable, and substantial evidence would exist of "unreasonable noise" in the public nuisance sense. The focus, then, shifts to the circumstances surrounding Martin's conduct.

■ Martin describes the circumstances as taking place near a volleyball court in an outdoor picnic area. He suggests that one might well have to raise his voice to be heard over the din typically accompanying outdoor picnic festivities. From the record, however, it appears that soon after the officers approached Martin, those engaged in recreation had stopped and, when the verbal exchange between Martin and the officers took place, the men were encircled by a crowd of twenty to thirty relatively quiet people. The evidence favorable to the State is that Martin's response to the officers' admonitions was "almost a yell," "very loud," and "louder than necessary to be heard." The jury in the present case, unlike the court in *Cavazos*, had evidence before it from which it reasonably could conclude that Martin made noise which was unreasonable under the circumstances.

### B.

### *Admonition to Stop*

■ Martin also contends the State failed to present sufficient evidence that Martin was admonished to stop making unreasonable noise prior to his arrest. Martin points to Officer Trowbridge's request

that he "calm down," and argues that such a request cannot be interpreted as an admonition to stop making unreasonable noise, but only to "speak in a calmer fashion." We need not determine whether the officer's request to "calm down" was a sufficient admonition; we find another statement made to Martin sufficient. Officer Meade told Martin that if he continued to act in a disorderly manner, Meade would place him under arrest for disorderly conduct. This specific admonition can reasonably be interpreted as a request to stop making unreasonable noise and, together with Officer Trowbridge's request that Martin "calm down," constitutes sufficient evidence from which the jury could find that Martin was, in fact, admonished to stop making unreasonable noise. Thus, we must affirm his conviction.

## II.

### *Public Intoxication*

Martin's challenge to his conviction for public intoxication focuses on the term "public."[4] He argues that MSSC was not a "public place" or "place of public resort" as those terms are used in Ind.Code 7.1–5–1–3.[5]

An early definition of "public place" is found in *State v. Tincher* (1898), 21 Ind. App. 142, 51 N.E. 943:

> A 'public place' does not mean a place devoted solely to the use of the public; but it means a place which is in point of fact public, as distinguished from private,—a place that is visited by many persons, and usually accessible to the neighboring public.

51 N.E. at 944. Because a private residence is not "usually accessible to the neighboring public," the court reversed Tincher's conviction for being found intoxicated while attending a party at a private residence. *Id.*

More recently, our Indiana Supreme Court defined "public place" in *State v. Baysinger* (1979), 272 Ind. 236, 397 N.E.2d 580, *reh. denied, appeal denied sub. nom. Dove v. Indiana* (1980), 449 U.S. 806, 101 S.Ct. 52, 66 L.Ed.2d 10:

> Webster defines 'public' as 'open to common and general use, participation or enjoyment' of the public. It has been held that the term 'public place' as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts v. State*, 1908, 4 Ga.App. 207, 60 S.E. 1082, 1085.

397 N.E.2d at 583.

These definitions have been applied in several cases. In *Atkins v. State* (1983), Ind.App., 451 N.E.2d 55, the defendant was found drunk while in a car on a public highway. The court held that she was in a public place and affirmed her conviction for public intoxication. 451 N.E.2d at 56.

In another case, however, where a defendant was in a car parked on a private lane twenty to thirty feet from a public highway, he was held not to be in a public place and his conviction for public intoxication was reversed. *Cornell v. State* (1980), Ind.App., 398 N.E.2d 1333, 1338 (Buchanan, C.J., dissenting), *reh. denied.*

In *Bridgewater v. State* (1982), Ind.App., 441 N.E.2d 688, *trans. denied*, defendant was found drunk in a bank parking lot. The lot was privately owned and was used primarily by bank employees, but it was also open to the public and its spaces were available for lease. Moreover, at night the lot was commonly used as a public lot with the bank's acquiescence. The court held that the lot was a public place and affirmed defendant's conviction. 441 N.E.2d at 690.

And, in *State v. Culp* (1982), Ind.App., 433 N.E.2d 823 (Buchanan, C.J., dissenting), *trans. denied*, 446 N.E.2d 969 (Ind.

---

**4.** Martin does not contest that he was intoxicated.

**5.** · 7.1–5–1–3 provides:

"It is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication."

1983) (Hunter, J., dissenting), two men were arrested for public intoxication after being found drunk on a common stairway in an apartment house. Judge Shields observed that,

[u]nlike business enterprises, members of the public at large are not impliedly invited or encouraged to enter the common areas of an apartment house except when they have personal and private matters to conduct with the tenants.

433 N.E.2d at 824 (footnote omitted). Therefore, the defendants were not in a public place, and their convictions were reversed. *Id.*

 As we noted at the outset, Martin's challenge is to the sufficiency of evidence supporting his conviction. We conclude the evidence is sufficient to show that Martin was, at the time of his arrest, in a public place. The record shows that MSSC's policy is to allow any person, including those who are neither members nor their invited guests, to enter club property and use the facilities, as long as members do not complain. No gate controls entry to club property. The only areas of the club which are fenced are the pool (which is fenced to meet State health regulations) and the tennis courts (which are fenced solely to keep tennis balls on the courts). Slips at the club's marina are leased not only to club members but also to the general public. Most of the facilities at MSSC, including the volleyball court, tennis courts, softball diamond, and trapshooting range, were accessible to—and had been used with MSSC's acquiescence by—the general public.

To summarize, the record contains evidence which supports the inference that the MSSC, while private property, was accessible to the general public and was used by it with the club's consent. The evidence, therefore, supports the inference that Martin was intoxicated in a "public place" or "place of public resort" as those terms have been defined and applied in Indiana. While the record also contains evidence which would support the opposite conclusion, our standard of review requires that we not reweigh the evidence, but affirm Martin's conviction for public intoxication.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.