Colleen PRICE, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–9109–CR–378.

Court of Appeals of Indiana,
Second District.

Sept. 14, 1992.

Fran Quigley, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant Colleen Price was convicted of Disorderly Conduct a Class B Misdemeanor,[1] and Public Intoxication, a Class B Misdemeanor.[2] Her appeal presents the following issues for our review:

I. Whether the "unreasonable noise" prohibition of I.C. 35–45–1–3(2), Indiana's disorderly conduct statute, violates the First and Fourteenth Amendments of the United States Constitution upon grounds of vagueness or overbreadth;

II. Whether the "unreasonable noise" prohibition violates article I, section 9 of the Indiana Constitution; and

III. Whether the evidence is sufficient to support the judgment upon the counts of Disorderly Conduct and Public Intoxication?

We affirm.

The facts most favorable to the judgment reveal that Officer Doug Cook of the Indianapolis Police Department was driving in the 1600 block of East Pleasant Street at 3:00 a.m. on January 1, 1991. He saw Price standing on the sidewalk in front of a house, arguing with Eddie Coleman and Paula Brown. The three were yelling loud enough for Officer Cook to be able to hear them from his car.

Officer Cook approached the three and made inquiry about the occurrence. Coleman became abusive. Officer Cook told him to quiet down three times, but Coleman simply became more abusive. Officer Cook told Coleman he was under arrest, whereupon Coleman started to run. As Officer Cook started after him, Price grabbed his arm. When Cook broke free, Price grabbed the microphone cord of his police radio. Officer Cook jerked the cord from Price and chased Coleman.

Officer David A. Carver of the Indianapolis Police Department was driving by the scene just as Coleman ran away. Officer Carver pursued Coleman, caught him, and effected the arrest. Price and Brown confronted the officers in an alley as they were bringing Coleman to the police car. They protested Coleman's arrest to the officers loudly and abusively, yelling and screaming. Officer Cook told Price to get out of the way and threatened her with arrest for disorderly conduct, to which she responded by yelling: "Fuck you. I haven't done anything." Record at 84. Officer Cook asked Price to quiet down twice, but Price kept yelling. The altercation was loud enough to attract the attention of neighbors, who came out of their houses. Cook arrested Price.

Price had been at a New Year's Eve party at which beer had been served earlier in the evening. Coleman, Brown and Price were still in front of the house where the party had been when Officer Cook first drove by and spotted them arguing. Price admitted drinking four or five glasses of beer earlier in the evening at the party. Officer Cook noticed that Price's speech was slurred, and that her breath had a strong odor of alcohol. Officer Cook opined that she was intoxicated.

---

1. I.C. 35–45–1–3 (Burns Code Ed.Supp.1992).

2. I.C. 7.1–5–1–3 (Burns Code Ed.1991).

## I.

Price asserts that the trial court erred in denying her motion to dismiss the Disorderly Conduct charge upon federal constitutional grounds. She argues that the "unreasonable noise" provision with which she was charged is vague and overbroad in violation of the First and Fourteenth Amendments.

I.C. 35–45–1–3(2) provides:

"A person who recklessly, knowingly, or intentionally: ...

(2) Makes unreasonable noise and continues to do so after being asked to stop; ... commits disorderly conduct, a Class B misdemeanor."

### A.

■ Price first challenges the statute as overbroad. A defendant may challenge a statute facially upon overbreadth grounds, whether or not the individual defendant's conduct is constitutionally protected. *Osborne v. Ohio* (1990) 495 U.S. 103, n. 8, 110 S.Ct. 1691, 1697, n. 8, 109 L.Ed.2d 98. However, a statute is not overbroad merely because one might conceive of a single impermissible application. *Id.*, 495 U.S. at 1697; *City of Houston, Texas v. Hill* (1987) 482 U.S. 451, 458–60, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398. Rather, a statute is overbroad only if it prohibits a substantial amount of protected conduct. *Osborne, supra; Hill, supra.*

■ Authoritative constructions by state courts control the overbreadth analysis. *Osborne, supra,* 495 U.S. at 1698, 1701–02; *Ward v. Rock Against Racism* (1989) 491 U.S. 781, 795–96, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661. An opinion of an intermediate appellate court may be considered "authoritative" for purposes of constitutional analysis when it has received acceptance as the law over a period of time. *Kolender v. Lawson* (1983) 461 U.S. 352, 355, n. 4, 103 S.Ct. 1855, 1857, n. 4, 75

L.Ed.2d 903. In considering a constitutional challenge, Indiana courts accord a statute every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *Brady v. State* (1991) Ind., 575 N.E.2d 981, 984.

Our Supreme Court interpreted the predecessor statute to I.C. 35–45–1–3(2) in *Hess v. State* (1973) 260 Ind. 427, 297 N.E.2d 413; *rev'd by Hess v. Indiana* (1973) 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303. That statute stated:

"Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by *loud or unusual noise,* or by tumultuous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct...." (Emphasis supplied.) I.C. 35–27–2–1 (Burns Code Ed.Supp.1972, § 10–1510). (For identical provision, see I.C. 35–27–2–1 (Burns Code Ed.1975).)

In deciding the case, our Supreme Court held that the statute could not be applied to a person exercising his right to free speech unless the speech 1) was obscene, 2) consisted of fighting words, 3) amounted to a public nuisance, or 4) incited imminent lawless action, citing the relevant United States Supreme Court cases holding speech in these particular categories to be unprotected by the First Amendment. Although the United States Supreme Court reversed the *Hess* decision, it did not question Indiana's analysis of speech in terms of these separate categories. Rather, the Court held that the Indiana courts erred in holding the statement Hess had made to be fighting words. *Hess v. Indiana, supra,* 414 U.S. at 106–10, 94 S.Ct. at 328–29.

I.C. 35–45–1–3 is worded differently than the predecessor statute interpreted in *Hess.* However, our courts have consistently applied the categories-of-speech analysis enunciated in *Hess.*[3] In *State v. New*

---

**3.** It might be argued that by changing the statutory language from "loud or unusual noise" to "unreasonable noise", the Legislature intended the statute to be construed differently. However, the change is likely to have been occasioned by a desire to adopt the language of the Model Penal Code upon the subject. *See* Model Penal Code, § 250.2, at 324. The Model Penal

(1981) Ind., 421 N.E.2d 626, our Supreme Court considered the present statute. In *New*, the defendant believed that he and another had been wrongfully dispossessed of rental property. The two were trying to break open a padlocked door to the property when police officers confronted them, and told them to get a court order. The defendant ignored the officer and told the other to "cut the son of a bitch [lock] off." The officer told him to stop cussing or he would arrest him for disorderly conduct, to which the defendant responded: "move him out of the way and cut the son of a bitch off." *Id.* at 627.

The trial court applied the *Hess* framework to the new statute and concluded that New's indictment must be quashed because his speech did not fall within any of the *Hess* categories of unprotected speech. The parties agreed that the statute was constitutional, so the court did not explicitly address that question. Nevertheless, our Supreme Court applied the only arguably relevant prong of the *Hess* framework to reverse the trial court, holding that New's speech was intended and likely to produce imminent disorder. *Id.* at 629.

This court has interpreted I.C. 35–45–1–3(2) on numerous occasions, consistently applying the *Hess* framework. In *Mesarosh v. State* (1984) 4th Dist. Ind.App., 459 N.E.2d 426, 427–28, the court explicitly recognized the *Hess* categories of unprotected speech and upheld a conviction by applying the "fighting words" category. Similar results were reached in *Gilles v. State* (1988) 4th Dist. Ind.App., 531 N.E.2d 220, 222–23, *trans. denied, cert. denied; Brittain v. State* (1990) 1st Dist. Ind.App., 565 N.E.2d 757, 760–61, *Brown v. State* (1991) 3d Dist. Ind.App., 576 N.E.2d 605, 606–07, and *Robinson v. State* (1992) 2d Dist. Ind.App., 588 N.E.2d 533; (*Hess* category analysis recognized and various epithets held to be fighting words). *See also Gamble v. State* (1992) 2d Dist. Ind.App., 591 N.E.2d 142.

In *Cavazos v. State* (1983) 2d Dist. Ind. App., 455 N.E.2d 618, 619–21, we impliedly recognized the *Hess* analysis in overturning a conviction upon grounds that the epithet "asshole" did not constitute fighting words. *See also Robinson, supra,* (Shields, J., dissenting). Finally, in *Martin v. State* (1986) 3d Dist. Ind.App., 499 N.E.2d 273, the public nuisance category was applied to sustain a conviction.

Although these cases have consistently included obscenity in listing the categories of unprotected speech, we have found no Indiana case which upholds a conviction for obscenity under I.C. 35–45–1–3(2), and we see no relevance of the obscenity category to the "unreasonable noise" prohibition. This conclusion is supported by comparison of the provision with the comparable provision of the Model Penal Code.

Model Penal Code § 250.2, approved by the American Law Institute in 1962, provides in relevant part:

"(1) A person is guilty of disorderly conduct if ... he:

(b) makes unreasonable noise *or offensively coarse utterance, gesture or display, or addresses abusive language to any person present.*" (Emphasis supplied).

The Model Penal Code Commentary, *supra,* § 250.2, at 334, describes the emphasized language as follows:

"As compared to other formulations, the Model Code phrase 'offensively coarse' has two chief virtues. First, *it makes plain the inclusion of scatology as well as obscenity.* Second, it requires that the speech in question be offensive and not an expression which, although 'indecent' or 'profane,' has become widely acceptable." (Emphasis supplied.)

The Legislature amended the disorderly conduct statute to its present form in 1976.

---

Code Commentary expresses a preference for the word "unreasonable" over "loud" in order to limit applications of the statute to situations in which loudness is inappropriate. Model Penal Code Commentary, *supra,* § 250.2, at 346–47.

In any event, we would be neglecting our duty to construe statutes as constitutional when reasonably possible if we were to rely upon this minor change in the statutory language to conclude that the revised statute is more broad than the old one and therefore unconstitutional.

Acts 1976, P.L. No. 148, § 5.[4] As amended, the statute tracks the language of Model Penal Code § 250.2 in prominent part; however, it omits the "offensively coarse" language and accompanying text. This omission may have been motivated in part by a concern over the constitutionality of the language. Nevertheless, in omitting this portion of the text, which was expressly intended to bring obscene speech within the purview of the statute, the Legislature evidenced a consideration whether it wished to draft language to compensate for the omission while addressing the constitutional concerns. Such result could have been easily accomplished, for example, by drafting the provision to read "unreasonable noise or obscene utterances". Since the Legislature did not draft any compensating language, we conclude that it intended to omit obscene speech from the coverage of I.C. 35–45–1–3(2).[5] We note that this interpretation promotes the internal consistency of the statute by limiting the applicability of the "unreasonable noise" subsection to "conduct which is itself disorderly" or which is "inherently likely to provoke a violent reaction." Model Penal Code Commentary, *supra*, § 250.2, at 348.

■ To the extent that the "unreasonable noise" provision of I.C. 35–45–1–3(2) prohibits unreasonable noise which emanates from speech, we now explicitly hold that the statute may constitutionally do so with respect to: 1) "fighting words", as recognized by *Chaplinsky v. New Hampshire* (1942) 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031,[6] and as discussed in Indiana decisions; 2) speech inciting imminent lawless action, as defined by *Brandenburg v. Ohio* (1969) 395 U.S. 444, 446–49, 89 S.Ct. 1827, 1829–30, 23 L.Ed.2d 430; and 3) public nuisance speech (*see e.g., Kovacs v. Cooper* (1949) 336 U.S. 77, 86–87, 69 S.Ct. 448, 453–54, 93 L.Ed. 513).[7] It is obvious, but we nevertheless emphasize, that the unprotected speech in these categories must also constitute "unreasonable noise" before conviction is authorized under the statute. Interpreted to include only unreasonable noise and speech falling within the non-protected categories, I.C. 35–45–1–3(2) survives Price's overbreadth attack.

### B.

■ Price next challenges the statute upon grounds of vagueness. Although there has been some controversy upon the subject, it appears that a defendant may make a facial attack upon vagueness grounds where the statute reaches a substantial amount of constitutionally protected conduct, even when the statute clearly prohibits the defendant's conduct. *Kolender, supra,* 461 U.S. at 358, n. 8, 103 S.Ct. at 1859, n. 8; *but see id.,* 461 U.S. at 367–71, 103 S.Ct. at 1864–65 (White, dissenting). The vagueness doctrine requires that a penal statute define the criminal offense with sufficient clarity and definiteness that ordinary people may reasonably understand what conduct is prohibited. The statute

---

**4.** Subsequent amendments, not relevant to this discussion, were made in Acts 1977, P.L. No. 340, § 70, and Acts 1988, P.L. No. 92, § 9.

**5.** Obviously, the fact that a speaker's utterance was obscene would not insulate the speech from coverage under the statute if the speech also fell within one of the other *Hess* categories of unprotected speech.

**6.** The United States Supreme Court recently re-examined the fighting words doctrine in *R.A.V., v. City of St. Paul, Minnesota* (1992) — U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305. In that case, all nine Justices agreed to strike a St. Paul ordinance making it a misdemeanor to engage in various types of "hate speech" "which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." *Id.* at ——, 112 S.Ct. at 2541. Four Justices concurring separately reasoned that the Minnesota Supreme Court had misconstrued *Chaplinsky* to include as fighting words "expressive activity causing [merely] hurt feelings, offense, or resentment", and concluded that the statute was unconstitutionally overbroad. *Id.* at ——, 112 S.Ct. at 2559. We believe that our decisions applying *Chaplinsky* to the "unreasonable noise" provision follow a much narrower reading of *Chaplinsky* and are therefore not vulnerable to this criticism.

**7.** The United States Supreme Court recently recognized that governments have a substantial interest in protecting their citizens from unwelcome noise. *Ward v. Rock Against Racism, supra,* 491 U.S. at 795–96, 109 S.Ct. at 2756.

must also be worded in a manner which does not encourage arbitrary and discriminatory enforcement. *Id.*, 461 U.S. at 356–58, 103 S.Ct. at 1858.

Several courts have held disorderly conduct statutes to be unconstitutionally vague. Most of those cases, however, have interpreted statutory language which differs or is totally dissimilar, from the "unreasonable noise" provision of I.C. 35–45–1–3(2). In this regard, the following language has been held unconstitutionally vague: "Unnecessary noise", *Phillips v. Borough of Folcroft, Pennsylvania* (1969) E.D.Pa., 305 F.Supp. 766, 770; "improper noise", *Original Fayette Co. Civic & Welfare League v. Ellington* (1970) W.D.Tenn., 309 F.Supp. 89, 93–94; "loud or unusual noise, or ... profane, obscene or offensive language", *Pritikin v. Thurman* (1970) S.D.Fla., 311 F.Supp. 1400, 1402; (*but see City of Billings v. Batten* (1985) Mont., 705 P.2d 1120, 1124 (held, "loud or unusual noise" language is not vague or overbroad) and *Ross v. State* (1990) Tex.Ct. App., 802 S.W.2d 308, 315 (held, the language "abusive, indecent, profane, or vulgar language ... [which] by its very utterance tends to incite an immediate breach of the peace" is not vague or overbroad)); "loud and boisterous language", *Gardner v. Ceci* (1970) E.D.Wis., 312 F.Supp. 516, 518; and "indecent or disorderly conduct", *Satterfield v. State* (1990) 260 Ga. 427, 395 S.E.2d 816, 817. In addition, the phrases "abusive or obscene language", "profane, vulgar or indecent language", and "profanely curses or swears" have been held to be overbroad. *People v. Dietze* (1989) Ct. App., 75 N.Y.2d 47, 550 N.Y.S.2d 595, 600–01, 549 N.E.2d 1166, 1171; *City of Maryville v. Costin* (1991) Mo.Ct.App., 805 S.W.2d 331, 332; *Burgess v. City of Virginia Beach* (1989) 9 Va.App. 163, 385 S.E.2d 59, 60; *but see Ross, supra.*

On the other hand, the clear majority trend has recognized that "unreasonable noise" provisions which are construed only to prohibit unprotected speech are not unconstitutionally vague. *See State v. Anonymous* (1972–4) 6 Conn.Cir. 667, 298 A.2d 52, 54; *State v. Marker* (1975) 21 Or.App. 671, 536 P.2d 1273, 1276–77; *People v.*

*Fitzgerald* (1978) 194 Colo. 415, 573 P.2d 100, 103; *Commonwealth v. Mastrangelo* (1980) 489 Pa. 254, 414 A.2d 54, 58, *appeal dismissed; People v. Bakolas* (1983) 59 N.Y.2d 51, 462 N.Y.S.2d 844, 449 N.E.2d 738, 740; *Blanco v. State* (1988) Tex.Ct. App., 761 S.W.2d 38, 40–41; *Eanes v. State* (1990) 318 Md. 436, 569 A.2d 604, 616, *cert. denied; Earley v. State* (1990) Alaska Ct. App., 789 P.2d 374, 376; *City of Madison v. Baumann* (1991) 162 Wis.2d 660, 470 N.W.2d 296, 302. In this regard, several courts have explicitly concluded that the word "reasonable" does not present vagueness problems. *Baumann, supra; City of Seattle v. Eze* (1988) 111 Wash.2d 22, 759 P.2d 366, 370; *People v. Raby* (1968) 40 Ill.2d 392, 240 N.E.2d 595, 598, *cert. denied; see also, Cameron v. Johnson* (1968) 390 U.S. 611, 615–17, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182.

Our research has revealed only two cases which have held "unreasonable noise" provisions to be unconstitutionally vague and overbroad. In *Marks v. City of Anchorage* (1972) Alaska 500 P.2d 644, the language appeared in an Anchorage city ordinance. The Alaska Supreme Court refused to construe the language narrowly to overcome the facial challenge. In so doing, however, the court noted that no such limiting construction of the ordinance was requested because the City had chosen to not make an appearance in the action, and therefore, such limiting construction would not be considered. *Id.* at 657. It may be noted that *Marks* was decided in 1972, at which time the great majority of the cases voiding disorderly conduct statutes for vagueness had been only recently decided.

An "unreasonable noise" provision was also declared unconstitutionally vague by a federal district court in *Langford v. City of Omaha* (1989) D.Neb., 755 F.Supp. 1460, 1463. That decision is unconvincing. It does not refer to the nine cases holding the same language constitutional, and cites only *Pritikin, supra,* and *Original Fayette County Civic & Welfare League, supra,* in support of its conclusion. As noted above, however, those cases interpreted "loud or unusual noise" and "improper

noise" provisions, respectively. In addition, they were both decided in 1970, before *any* of the cases holding the "unreasonable noise" language to be constitutional were decided.

■ The "unreasonable noise" provision of I.C. 35–45–1–3(2), as we have interpreted it, prohibits noise, including speech, which constitutes a public nuisance or breach of the peace. In essence, this definition encompasses noise, including unprotected speech, which is unreasonably loud under the circumstances.[8] This definition adequately puts citizens on notice as to what noise and speech are prohibited.[9] As the Supreme Court stated in *Colton v. Commonwealth of Kentucky* (1972) 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584:

"[The vagueness doctrine] is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

■ In addition to putting persons on notice as to what conduct is proscribed under a statute, the vagueness doctrine requires that the statute establish minimal guidelines to govern law enforcement officers because a failure to provide such guidance "may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender, supra,* 461 U.S. at 358, 103 S.Ct. at 1858, quoting *Smith v. Goguen* (1974) 415 U.S. 566, 574–76, 94 S.Ct. 1242,

8. In *R.A.V. v. City of St. Paul, supra,* —— U.S. ——, 112 S.Ct. 2538, the majority opinion discussed in some detail standards for evaluating content discrimination through regulation of "unprotected" speech (e.g. fighting words). The Court concluded that laws prohibiting some but not all speech within an unprotected category upon the basis of content must be carefully examined to determine whether the purpose of the prohibition is to suppress particular ideas or viewpoints. To be sure, I.C. 35–45–1–3(2) prohibits only that subset of fighting words which also constitute "unreasonable noise". This subset, however, is content neutral, and therefore, need not be justified within the framework of the *R.A.V.* analysis. Indeed, the opinion twice cites "noise" as a non-content element of speech. *Id.* at ——, 112 S.Ct. at 2544–45.

9. We acknowledge that there has been some uncertainty if not inconsistency in the application of the "fighting words" doctrine by this court. In *Brittain, supra,* 565 N.E.2d at 761, the First District held that the words "son-of-a bitch" and "fucker" addressed to police officers constituted fighting words. Indeed, the Third District has held that shouting "undisclosed obscenities" to police officers is sufficient to convict under the statute. *Lepard v. State* (1989) 3rd Dist. Ind.App., 542 N.E.2d 1347, 1351. In *Brown, supra,* 576 N.E.2d at 607, the Third District concluded that telling a police officer one wants to kill him and threatening him with a "Sicilian necktie" constitutes fighting words. On the other hand, the Second District concluded in *Cavazos, supra,* 455 N.E.2d at 621, that the epithet "asshole" addressed to a police officer did not constitute fighting words as a matter of law, with Judge Buchanan dissenting upon grounds that it did constitute fighting words. In *Mesarosh, supra,* 459 N.E.2d at 429, the

Fourth District held that the epithet "motherfucker" addressed to a police officer did constitute fighting words, with Judge Young concurring solely upon grounds that the volume of the speech was "unreasonably loud". In *Gilles, supra,* 531 N.E.2d at 223, the Fourth District concluded that referring to people in a crowd as "fuckers", "sinners", "whores", "queers", "drunkards", "AIDS people", and "scum of the earth" were fighting words; however, Judge Miller dissented, stating that the epithets were not fighting words in the context in which they were delivered.

The problem our courts have had in determining what language constitutes fighting words has perhaps been further complicated by holdings of the United States Supreme Court strictly interpreting the doctrine. *See Hess, supra,* (held, the statement "we'll take the fucking street later/again" is not punishable as fighting words); *Cohen v. California* (1971) 403 U.S. 15, 24–28, 91 S.Ct. 1780, 1788–89, 29 L.Ed.2d 284, (held, appearing in a county courthouse wearing a jacket bearing the plainly visible legend "Fuck the Draft" does not amount to use of fighting words). *See also* Model Penal Code Commentary, *supra,* § 250.2, at 339–43.

Notwithstanding the difficulties we have experienced in applying the fighting words doctrine, we decline to hold that it presents a standard that is so vague as to fail to put people on notice as to what acts are proscribed. Clearly, the United States Supreme Court believed that the standard was not impermissibly vague when it promulgated the doctrine in *Chaplinsky* and reaffirmed it as recently as 1987 in *Hill, supra,* 482 U.S. at 462–65, n. 12, 107 S.Ct. at 2510–11, n. 12. Some guidance from our Supreme Court, however, may be appropriate in defining the scope of the doctrine in Indiana.

1248, 39 L.Ed.2d 605. *Kolender* opined that that the problem of unguided police discretion is the more important aspect of the vagueness doctrine. *Kolender, supra,* 461 U.S. at 356–58, 103 S.Ct. at 1858. Indeed, the problem is exacerbated when the police officer is both the victim and the judge of verbal abuse, and the Supreme Court has consistently invalidated laws giving the police overly broad discretion to arrest individuals for words or conduct that merely annoy or offend them. *See, e.g., Kolender, supra,* 461 U.S. at 358–62, 103 S.Ct. at 1859–60; *Smith, supra,* 415 U.S. at 574–76, 94 S.Ct. at 1248; *Papachristou v. City of Jacksonville* (1972) 405 U.S. 156, 169–70, 92 S.Ct. 839, 847, 31 L.Ed.2d 110.

In the Model Penal Code Commentary, *supra,* § 250.2, at 349–54, the drafters elaborated upon the problems presented by this particular situation. In such a case, the officer's decision to arrest has the character of a final disposition in many respects. As noted by the drafters:

> "The arrest itself is a sanction. Conviction is quite likely to follow arrest if the officer presses the matter, since even the more carefully drafted disorderly conduct statute leaves considerable room for interpretation and the magistrate is likely to be sympathetic with the police version of the facts." Model Penal Code Commentary, *supra,* § 250.2, at 350.

In addition, a conviction based upon the word of a single officer will withstand attack upon appeal under our modern standard of review for the sufficiency of the evidence. *See Humphries v. State* (1991) 4th Dist. Ind.App., 568 N.E.2d 1033. Notwithstanding these considerations, the cases entertaining vagueness challenges do not discuss these problems in any detail.

We note initially that merely arguing with a policeman is not disorderly conduct. *Thompson v. City of Louisville* (1960) 362 U.S. 199, 205–06, 80 S.Ct. 624, 628–29, 4 L.Ed.2d 654; *Humphries, supra,* at 1036. In addition, we recognize that a properly trained police officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and to be less likely to respond belligerently to

"fighting words". *Hill, supra,* 482 U.S. at 462–63, 107 S.Ct. at 2510; *Lewis v. City of New Orleans* (1974) 415 U.S. 130, 134–36, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (Powell J., concurring); *see also Evans v. State* (1982) 1st Dist. Ind.App., 434 N.E.2d 940, 943, n. 2. This is particularly the case inasmuch as the police officer's official duties are especially likely to involve him in volatile and hostile situations.

Thus, it is clear that protesting an arrest, or venting frustration by directing profanity at a police officer is insufficient of itself to sustain a conviction under the fighting words prong of the "unreasonable noise" subsection. *See Robinson, supra,* 588 N.E.2d at 536–37, (Shields, J., dissenting). We conclude that in order to violate the I.C. 35–45–1–3(2), when the utterance is alleged to be "fighting words", the circumstances must present additional indicia of serious provocation likely to incite even a police officer to an immediate and violent reaction.

We acknowledge that it is possible to read the Indiana cases upholding convictions under the disorderly conduct statute as inconsistent with this conclusion. However, most of the cases admit of facts which bring them within the principles earlier enunciated, even though the courts did not focus explicitly upon them. For example, in both *Mesarosh, supra,* 459 N.E.2d at 426 and *Brown, supra,* 576 N.E.2d at 606, the defendants' protests attracted the attention of people in the vicinity of the scene. In *Brittain, supra,* 565 N.E.2d at 758, the defendant's protest was "loud enough to be heard outside the trailer" where the incident took place. And in *Gilles, supra,* 531 N.E.2d 220, the "fighting words" were directed at a crowd rather than at police officers.

The only cases which appear to be squarely contrary to our holding are *Robinson, supra,* 588 N.E.2d 533, and *Gamble, supra,* 591 N.E.2d 142. The opinions in those cases state that the defendant "screamed" profanities at the police officer and screamed profanities "at the top of his lungs", respectively. The *Robinson* court held that directing profanities at a police

officer constituted fighting words without regard to whether the words were intended or likely to result in a breach of the peace, or that the screaming in any way constituted a nuisance to the public under the circumstances. Instead, the court concluded that personal epithets and verbal abuse do not enjoy constitutional protection, noting that "[i]t is a sad commentary of our modern society that law enforcement officers must be subjected to insults such as those used in the present case." *Robinson, supra,* 588 N.E.2d at 535, quoting *Mesarosh, supra,* 459 N.E.2d at 430. The *Gamble* court simply concluded that the defendant's profane statements were undeserving of constitutional protection, citing, *inter alia, Robinson,* 591 N.E.2d at 144.

Without reservation we agree that law enforcement officers should not be subjected to undue verbal abuse. However, it is also true that the training of a police officer includes an emphasis upon objectivity, calm and self-control. Police are trained to be a part of the solution to a particular disruptive problem rather than a contributing factor to the problem. These considerations do not in any way undercut the duty of police to maintain the public peace and to effect arrests where necessary. In any event, the disorderly conduct statute was never intended to prevent mere protests against police officers, and could not be constitutionally construed to do so. As stated in *City of Houston v. Hill, supra:*

> "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.

'Speech is often provocative and challenging' ... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.' " *Hill, supra,* 482 U.S. at 479, 107 S.Ct. at 2509, quoting *Terminiello v. Chicago* 337 U.S. 1, 69 S.Ct. 894, 895, 93 L.Ed. 1131. *See also Cohen, supra,* 403 U.S. at 20, 91 S.Ct. at 1785.

As so construed, we conclude that the "unreasonable noise" language of the statute does not vest the police with unwarranted discretion to suppress speech protected by the First Amendment. The statute therefore is not unconstitutionally vague.

Price suggests in her brief that police do in fact exercise discretion under the statute to charge people "who object to the manner in which the officers are conducting themselves in the course of an investigation, traffic stops or the like." Brief of Appellant at 19–20. In effect, Price accuses the police of using the statute in bad faith to prevent people from exercising their right to free speech. There is no cognizable evidence in this case to support that assertion. We accordingly reject the suggestion as a basis for reversal of these convictions.[10]

In light of the foregoing discussion, we conclude that the "unreasonable noise" prohibition of I.C. 35–45–1–3(2) is not unconstitutionally vague or overbroad.

---

**10.** Price cites statistics attributed to the "Marion County Justis Agency" [sic] concluding that of the 3893 Disorderly Conduct charges filed in the Marion County Municipal Courts in the 1990 calendar year, 2046 cases were dismissed.

We note that the citation to the record for this proposition refers only to Price's own Memorandum of Law in Support of Motion to Dismiss, which simply states the statistics and attributes them to the Agency without actually stating where the information was published or how it could be verified. Even were we to accept these unsupported statistics as accurate, they would not provide sufficient basis upon which to invalidate the statute in general or her conviction in particular.

As a matter of equal protection, these statistics do not in any way prove purposeful discrim-

ination against a suspect or any other identifiable class. Neither do they supply the particularized information necessary to provide a basis for an "as applied" constitutional challenge. At best, they provide a reason to petition the Legislature to amend or repeal the statute. *See Lewis, supra,* 415 U.S. at 140–42, 94 S.Ct. at 976 (Blackmun, J., dissenting). Legislative amendment may be appropriate where, as here, much of the behavior sought to be prohibited by the statute is already prohibited by other criminal statutes. *See e.g.* I.C. 35–42–2–3 (Burns Code Ed.1985) (Provocation); I.C. 35–44–3–3 (Burns Code Ed.Supp.1992) (Resisting Law Enforcement); I.C. 35–45–1–2 (Burns Code Ed.1985) (Rioting). However, such policy considerations do not provide a basis for relief in the courts.

## II.

Price next challenges I.C. 35–45–1–3(2) as violative of Indiana Constitution, article I, section 9. In essence, Price offers a historical analysis and invites us to conclude that the statute is inconsistent with the values of the people who created and ratified the Indiana Constitution.

In interpreting particular provisions of the Indiana Constitution, we search for the common understanding of both those who framed it and those who ratified it. *Bayh v. Sonnenburg* (1991) Ind., 573 N.E.2d 398, 412. This search is guided by the history, purpose, and case law surrounding the provision, *State Election Board v. Bayh* (1988) Ind., 521 N.E.2d 1313, 1316. However, the analysis must be controlled by a fair reading of the text itself.

article I, section 9 states:

"No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, *on any subject whatever: but for the abuse of that right,* every person shall be responsible." (Emphasis supplied.) (Burns Code Ed.1990).

This language clearly focuses upon the content of the speech, protecting the right to speak without having particular opinions censored. Indeed, the language "right to speak ... freely ... on *any subject whatever*", taken upon its face, could be read to suggest that the State is without power to impose content-based limitations upon speech. That argument, however, was rejected in *Fordyce v. State* (1991) 2d Dist. Ind.App., 569 N.E.2d 357.

In *Fordyce,* this court addressed the question whether Indiana's obscenity statute, which was held to be consistent with the First Amendment of the United States Constitution, violated article I, section 9 of the Indiana Constitution. In support of his argument, the appellant cited *State v. Henry* (1987) 302 Or. 510, 732 P.2d 9. The Oregon Constitution was modeled upon Indiana's and its free speech provision is identical. In *Henry,* the Oregon Supreme Court held that its free speech provision protected all speech without regard to content, and therefore, that obscene speech,

although subject to regulation like any other speech, was entitled to the same protection under the Oregon Constitution as any other message. *Id.* 732 P.2d at 18.

The *Fordyce* court rejected this invitation to hold broadly, in reliance upon *Henry,* that article I, section 9 protects all speech which is unprotected by the First Amendment. In considering obscene speech in particular, the court noted the prevalence of proscriptions upon obscenity at the time of the constitutional convention, and concluded that the framers would have assumed that obscenity was beyond the protection of the constitutional provision. *Fordyce, supra,* at 361–62.

*Fordyce* stands for the proposition that some categories of speech, including content-based categories, may be prohibited consistent with article I, section 9. This proposition gains support from the language "but for the abuse of that right, every person shall be responsible", which clearly contemplates the possibility that a person may abuse the right and subject himself to legal sanctions. Indeed, our Supreme Court has held that any alleged impingement upon article 1, section 9 must be weighed in the balance against the public health, welfare and safety served, *Johnson v. St. Vincent Hospital, Inc.* (1980) 273 Ind. 374, 404 N.E.2d 585, 605, implying that the values expressed in the first portion of the constitutional provision are not absolute. Thus, the issue before us is whether the particular categories of speech prohibited by the "unreasonable noise" provision of I.C. 35–45–1–3(2) are protected under the Indiana constitutional provision.

We note at the outset that the 1850 Constitution became effective November 1, 1851, and provided that "[a]ll laws now in force, and not inconsistent with this Constitution, shall remain in force until they shall expire or be repealed." Indiana Constitution Schedule, *reprinted in* 1852–53–55 *Ind.Laws* at 27 (Chapman 1852). The Act creating Chapter 6 of Part Third of the Indiana statutes, which defined and prescribed punishment for misdemeanors, was approved June 14, 1852. [1852] 2 Ind.Statutes 361. Many, if not most, of the statu-

tory prohibitions codified pre-existing common law. (*See* footnotes to Chapter 6, 2 Ind.Statutes at 424–47.)

Chapter 6 made challenging a person to fight a duel a misdemeanor. 2 Ind.Statutes at 424 (section 1), codifying the holding of *State v. Perkins* (1841) Ind., 6 Blackf. 20. That offense, like the use of fighting words, consisted of speech which was intended to evoke a violent response. In light of the pre-existing common law upon the subject and the codification of the crime of challenging to fight a duel shortly after the 1850 Constitution's effective date, it does not appear that the framers and ratifiers of the Constitution intended to put speech akin to "fighting words" beyond the power of the Legislature to proscribe.

■■■■ In addition, the "fighting words" doctrine itself has long been an accepted part of Indiana law, notwithstanding the difficulties we have experienced in its application. Our Supreme Court applied it in *Hess*, and this court has applied it on numerous occasions, as discussed above. We presume that our Supreme Court would have recognized the applicability of article I, section 9 to the "fighting words" analysis if it believed any existed. We conclude, therefore, that article I, section 9 of the Indiana Constitution does not protect "fighting words".

The "inciting imminent lawless action" doctrine also has its counterpart in the 1852 Act creating Chapter 6 of the criminal code. That chapter prohibited rioting. 2 Ind.Statutes at 425 (section 4). The common law had long recognized that encouraging or promoting a riot, "whether by words, signs or gestures, or by wearing the badge or ensign of the rioters" was sufficient to convict a person of rioting, even where the defendant had not personally engaged in violent acts. *Clifford, Esq. v. Brandon* (1809) 2 Campb. 358, 370; *See also Rex v. Royce* (1767) 4 Burr 2073; *King v. Hunt* (1754) 1 Kenyon's Rep. 108. The footnote to the statutory section prohibiting rioting dutifully reports these cases and their holdings, suggesting that the rioting statute was to be interpreted in light of these common law precedents. *See* 2

Ind.Statutes at 425–26 (footnote accompanying section 4). This evidence makes it unlikely that the drafters and ratifiers of the Indiana Constitution intended to put speech inciting imminent lawless action beyond the authority of the Legislature to proscribe.

■■■■ Our Supreme Court recognized and applied the modern statement of the "inciting imminent lawless action" doctrine in *Hess* and again in *New, supra.* Thus, the historical and modern evidence suggests that speech falling into this category also falls outside the protections of article 1, section 9 of our Constitution.

Finally, we address the public nuisance limitation upon speech. The 1852 Act prohibited public nuisances, 2 Ind.Statutes at 428–29 (sections 8–10), disturbing religious meetings, 2 Ind.Statutes at 437 (section 37), and obstructing highways. 2 Ind.Statutes at 444 (section 66). The available case law and the drafting of the statutory sections suggest that the public nuisance prohibitions were primarily understood to punish persons who operated *places* in which public disorder was encouraged, *e.g.*, drinking, carousing, swearing · and the like. *See State v. Bertheol* (1843) Ind., 6 Blackf. 474; *State v. Mullikin* (1846) Ind., 8 Blackf. 260. However, both the statute and the case law cite to the common law for the proposition that the prohibition against public nuisances also encompassed "making great noises at night." *See* 2 Ind.Statutes at 428; *Bertheol, supra*, at 475, citing *Rex v. Smith* (1726) 93 Eng.Rep. 795, 2 Strange 704.

It may also be noted that the public nuisance category, while not involving "imminent violence" or "imminent breach of the peace", does carry with it the climate of public disorder. Thus in *Keefer v. State* (1910) 174 Ind. 588, 92 N.E. 656, blasting in a stone quarry which threw rocks and debris upon surrounding land resulted in affirmance of a public nuisance conviction. The holding was in large measure prompted by a definition of nuisance cast in terms of injury to health, offense to the senses or anything that interferes with the free "enjoyment of life or property". 174 Ind. at 589, 92 N.E. 656.

■ The "public nuisance" category was also part of the *Hess* analysis, and was applied by our Third District in *Martin, supra,* 499 N.E.2d 273. As noted above, the United States Supreme Court has recognized that governments have a substantial interest in protecting their citizens from unwelcome noise. *Ward, supra,* 491 U.S. at 795-96, 109 S.Ct. at 2756. Indeed, the language of the Indiana Constitution, "but for the abuse of that right, every person shall be responsible" seems intended at least in part to enable the State to enact statutes to punish unreasonably loud speech. We conclude that unreasonable noise which constitutes a public nuisance does not violate article I, section 9.

In light of the foregoing discussion, we conclude that I.C. 35-45-1-3(2) is consistent with article I, section 9 of the Indiana Constitution.

### III.

■ Price next challenges the sufficiency of the evidence. Price first challenges the sufficiency upon the charge of Disorderly Conduct. I.C. 35-45-1-3 provides:

"A person who recklessly, knowingly, or intentionally: ...

(2) Makes unreasonable noise and continues to do so after being asked to stop;

...

commits disorderly conduct, a Class B misdemeanor."

■ The determination whether the defendant acted knowingly or intentionally is a matter to be determined by the trier of fact. *Gee v. State* (1988) Ind., 526 N.E.2d 1152, 1154; *McCaffrey v. State* (1988) 2d Dist. Ind.App., 523 N.E.2d 435, 436. In determining the existence of the requisite degree of mental culpability, the jury may, indeed often must, rely upon reasonable inferences drawn from consideration of the circumstances surrounding the offense. *McCaffrey, supra,* at 437.

The facts most favorable to the judgment are that in protesting Coleman's arrest, Price yelled, screamed, and got in the officers' way. Officer Cook twice asked her to quiet down; however, Price continued to scream loud enough to attract the attention of the neighbors, and drew them from their houses at 3:00 a.m.

The trier of fact could have reasonably concluded from Price's continued yelling, notwithstanding Officer Cook's admonitions, that Price intended to cause a loud disturbance. Furthermore, it could have concluded that the volume level of her protest was unreasonable in light of the time of day and the residential surroundings (thus bringing the "unreasonable noise" within the public nuisance category of unprotected speech).[11] Finally, the evidence indicated that Price continued to yell and scream after being asked to stop. The evidence was sufficient to sustain the conviction for Disorderly Conduct.

■ Price next challenges the sufficiency of the evidence upon the charge of Public Intoxication. I.C. 7.1-5-1-3 provides:

"It is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication."

Price asserts that the evidence was insufficient to prove either that she was in a public place or that she was intoxicated.

■ A "public place", as the term is used in the Public Intoxication statute, is a place open to common and general use, participation and enjoyment; a place accessible to the public. *Martin, supra,* 499 N.E.2d at 276; *See State v. Baysinger*

---

11. It could be argued that Price's loud protest was reasonable under the circumstances because she desired to call public attention in the form of the neighbors, to the presumed wrongfulness of the arrest. As suggested above, the statute would provide for Price's acquittal if the trier of fact agreed that the noise was in fact reasonable under the circumstances. As we stated in *Cavazos, supra,* 455 N.E.2d at 621: "Evidence of loudness, standing by itself, does not constitute evidence of *unreasonable* noise in the public nuisance sense. Loudness may be unreasonable, but that determination may be made only in the context of the surrounding circumstances." (Emphasis supplied.) *See also, Martin, supra,* 499 N.E.2d at 275. However, we decline to accept such an argument upon review of the sufficiency of the evidence. In any event, it may be noted that Price did not attempt to present any of the neighbors as witnesses in the case.

(1979) 272 Ind. 236, 397 N.E.2d 580, *rehearing denied, appeal denied sub. nom. Dove v. Indiana* (1980) 449 U.S. 806, 101 S.Ct. 52, 66 L.Ed.2d 10. This definition encompasses public highways. *Miles v. State* (1966) 247 Ind. 423, 216 N.E.2d 847; *Atkins v. State* (1983) 2d Dist. Ind.App., 451 N.E.2d 55, 56. On the other hand, a private residence, including the private grounds directly outside it, is not a public place within the meaning of the Public Intoxication statute. *State v. Stowers* (1876) 52 Ind. 311; *Haynes v. State* (1990) 2d Dist. Ind.App., 563 N.E.2d 159, 160.

The evidence most favorable to the judgment is that Price was on a concrete sidewalk going up to a house, off the main sidewalk on the 1600 block of East Pleasant Street when Officer Cook confronted Coleman, Brown and her. During the course of the altercation that followed, the four of them walked out onto the main sidewalk on Pleasant Street. Coleman eventually fled and was apprehended on the 1600 block of East Lexington, one block north and approximately 100 yards west of the spot where the initial altercation took place. The police were leading Coleman back to the police cars through an alley when Price confronted them again, having entered the alley from the 1600 block of Lexington.

The evidence that Price was on the private sidewalk leading to the house *off* the main sidewalk on the 1600 block of East Pleasant is, of itself, insufficient to conclude that Price was in a public place. However, the evidence revealed that Price was also on the main sidewalk during the course of the initial confrontation with Officer Cook. In addition, the trier of fact was reasonably entitled to infer that Price crossed a public sidewalk and street when she ran from 1600 East Pleasant to the alley of 1600 East Lexington. Because public sidewalks and streets are places where the public has a right to be and are generally accessible for public use, we conclude that they are "public places" within the meaning of the statute. Therefore, the

evidence is sufficient to conclude that Price was in a public place.[12]

With respect to the sufficiency of the evidence upon the element of intoxication, it is established that a non-expert witness may offer an opinion upon intoxication, and a conviction may be sustained upon the sole testimony of the arresting officer. *Atkins, supra,* 451 N.E.2d at 57.

Officer Cook testified that Price's words were slurred and that she had a strong odor of alcohol upon her breath. Price admitted drinking beer earlier that evening. In addition, Officer Cook opined that Price was intoxicated. This evidence is sufficient to sustain the judgment upon the element of intoxication, and therefore, upon the conviction for Public Intoxication.

We uphold the constitutionality of I.C. 35–45–1–3(2) in light of Price's vagueness and overbreadth challenge, and we conclude that the statutory section is consistent with article I, section 9 of the Indiana Constitution.

The judgment of the trial court is affirmed.

HOFFMAN, J., concurs.

SHIELDS, J., concurs with separate opinion.

SHIELDS, Judge, concurring.

I concur in the majority decision to the extent that it holds IC 35–45–1–3(2) (1988) is not overbroad. As the majority recognizes, a state court interpretation of a statute is authoritative for purposes of constitutional analysis and our appellate courts have consistently restricted the phrase, unreasonable noise, to those categories of speech delineated by our supreme court in *Hess v. Indiana* (1973), 260 Ind. 427, 297 N.E.2d 413; *rev'd by Hess v. Indiana* (1973), 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303, in addressing the vagueness and overbreadth challenges brought in that case. These categories include fighting words, speech inciting imminent lawless ac-

---

**12.** It is unclear upon these facts whether the alley was public (*i.e.* dedicated) or private; however, we need not decide the issue, since Price was in a public place in any event.

tion, public nuisance speech, *and* obscene speech.[1]

I concur in the majority decision to the extent that it holds the statute in question is not unconstitutionally vague following the majority trend which holds that an "unreasonable noise" provision which is construed to prohibit only unprotected speech, as is the statute in question, is not unconstitutionally vague.

I fully concur in the majority's resolution of the Indiana constitutional challenge and in its determination that the evidence is sufficient to sustain Price's convictions.

**1.** In discussing the overbreadth argument, the majority suggests with confidence that the legislature modeled IC 35–45–1–3(2) after a provision of the Model Penal Code although, out of constitutional concerns, it omitted the "offensively coarse" language. I suggest with equal confidence that whatever the source of our statute, the Legislature did not intend to decriminalize obscene speech. Nor did it. Noise is sound of any kind; spoken obscenities are as unreasonable as are the other categories of noise which the majority agrees constitutes unreasonable noise.

Also, in its third footnote, the majority assumes IC 35–45–1–3(2) would be unconstitutional if it were to be construed more broadly than its predecessor statute was construed by our supreme court in *Hess.* Neither the United States Supreme Court nor our supreme court has made such a pronouncement.