**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 30 2014, 10:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ERIC DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1308-CR-415 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David M. Hooper, Master Commissioner
Cause No. 49F18-1306-FD-36071

**April 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Eric Davis was convicted of class D felony intimidation, class B misdemeanor public intoxication, and class B misdemeanor disorderly conduct, following a bench trial. On appeal, Davis claims that the State presented insufficient evidence to support his convictions for intimidation and disorderly conduct.[1] Finding the evidence sufficient to support those convictions, we affirm.

**Facts and Procedural History**

The facts most favorable to the convictions indicate that on June 1, 2013, at approximately 6:00 p.m., Davis checked in to be an overnight guest at Good News Ministries ("Good News"). Good News is a shelter for homeless and indigent people located in Indianapolis. Davis brought three large garbage bags with him to the shelter. David Baird, the clientele manager for Good News, was in the chapel training a weekend supervisor when Davis "slid in" the pew behind Baird and stated that he wanted to talk. Tr. at 7. Baird smelled alcohol on Davis's breath and asked Davis if he had been drinking. Davis responded, "kinda sorta." *Id*. Baird remembered hearing that Davis had been to the shelter a few months prior and had caused some problems at that time. Baird went to find Chuck Edmonds, the executive director's father, to find out what he should do about the fact that Davis had obviously been drinking. Good News's policy is to let overnight guests stay even if they had been drinking as long as they do not cause any problems. Edmonds informed Baird that he should give Davis a breathalyzer test to determine his level of intoxication.

---

[1] Davis does not challenge the sufficiency of the evidence to support his public intoxication conviction.

When Baird approached Davis regarding a breathalyzer test, Davis became "really belligerent" and cursed and made accusations about the Good News organization. *Id.* at 9-10. Baird asked Davis to leave the shelter. As Davis gathered his things, he continued to rant and curse at the approximately fifteen people present in the chapel. Davis was angry and completely "irrational" as he dragged one of his garbage bags into the alley and then returned to get the rest of his things. *Id.* at 18. Eighty-three-year-old Edmonds stood watching and told Davis that he understood his anger but that "he just had a little bit too much of the corn." *Id.* at 11. Davis balled up his fist and declared, "I will whoop you, old man." *Id.* Baird stepped between Davis and Edmonds and told Davis to just move along. Davis dragged all of his things onto the sidewalk in front of the shelter and lay down. Edmonds went over to Davis and told him that he needed to leave, but Davis acted like he was sleeping and that he could not hear Edmonds. Employees of Good News called the police.

Indianapolis Metropolitan Police Department Officer Thomas Lawalin responded to the scene. After getting a brief synopsis of what had been going on from shelter employees, Officer Lawalin approached Davis to get his version of events. Within "a matter of a minute" of Officer Lawalin's arrival at the scene, Davis became "belligerent [and] argumentative" with the officer. *Id.* at 12. Davis informed Officer Lawalin that he "had issues with the staff" at Good News. *Id.* at 21. Officer Lawalin noticed that Davis's speech was very slurred and that his eyes were glassy and bloodshot. Officer Lawalin detected the odor of alcohol and asked whether Davis had been drinking. Davis admitted that "he had a few." *Id.* at 23. When Officer Lawalin told Davis that he could contact the Better Business

3

Bureau with his complaints about Good News, Davis gave Officer Lawalin a "dazed look" and stated, "f**k you too." *Id.* Davis was very "heated" and was like "a man on fire." *Id.* at 32. He was loud and raising his voice as "several faces" looked on. *Id.* Officer Lawalin responded "okay" and warned Davis to "calm down." *Id.* at 21-22.

Davis did not calm down. Davis ranted to Officer Lawalin that he was no better than the Good News employees and that he did not want the officer near him. Officer Lawalin noticed a family with children across the street on their porch watching the commotion. Officer Lawalin warned Davis that he needed to leave the area. Davis refused and continued his rant. Officer Lawalin told Davis that since he refused to leave his only option was to go to jail. Davis then just stood up and put his hands behind his back to be handcuffed. As Officer Lawalin handcuffed him, Davis "continued his belligerent rant" and told Officer Lawalin that he was "going to get [Officer Lawalin] and [his] society," and he accused Officer Lawalin of "killing his people." *Id*. at 22. After Officer Lawalin placed Davis in his squad car, Davis again threatened Officer Lawalin that he was going to kill him. Officer Lawalin felt very threatened by Davis. Davis also mentioned a "black wearing robe ass" judge and that he planned to "get her too." *Id*. at 23.

The State charged Davis with class D felony intimidation, class B misdemeanor public intoxication, and class B misdemeanor disorderly conduct. Following a bench trial, the court found Davis guilty as charged. This appeal ensued.

## Discussion and Decision

Davis challenges the sufficiency of the evidence to sustain two of his convictions. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the conviction. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We neither reweigh the evidence nor assess witness credibility. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence, and we will affirm the defendant's conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003).

## Section 1 – Intimidation

To convict Davis of class D felony intimidation, the State was required to prove that Davis communicated a threat to Officer Lawalin with the intent that he be placed in fear of retaliation for a prior lawful act. Ind. Code § 35-45-2-1(a)(2), -(b)(1)(B)(i). Davis's sole claim regarding this conviction is that the State did not prove that his threat to Officer Lawalin was in retaliation for the prior lawful act alleged in the charging information. Specifically, the State charged that

> Eric Davis did communicate a threat to Thomas Lawalin, a law enforcement officer with the Indianapolis Metropolitan Police Department, said threat being: "He was going to kill [Thomas Lawalin] too!" with the intent that said officer be placed in fear of retaliation for a prior lawful act, to wit: arriving on scene after being dispatched lawfully.

Appellant's App. at 18.

5

Davis argues that because his threats to Officer Lawalin were not made until after he was handcuffed, Davis must have intended to place Officer Lawalin in fear of retaliation for his prior lawful act of arresting Davis, and not his prior lawful act of arriving at the scene after being dispatched, as charged by the State. Based upon the facts before us, we find this distinction unremarkable. The evidence clearly indicates that Davis became argumentative and belligerent with Officer Lawalin the moment Officer Lawalin arrived on the scene. Davis was angered by Officer Lawalin's presence at the scene and cursed at the officer when he questioned him. As Davis himself testified, he was heated and like a "man on fire" at that point. Tr. at 32. The fact that Davis's threats to Officer Lawalin did not occur until after he was handcuffed and arrested is by no means dispositive of Davis's intent. A reasonable factfinder could infer that Davis intended to place Officer Lawalin in fear of retaliation for his prior lawful act of arriving at the scene in response to being dispatched, as charged by the State. Merely because the evidence suggests that Davis may have also intended to place Officer Lawalin in fear of retaliation for an additional prior lawful act of arresting him is of no moment. Under the circumstances presented, the State presented sufficient evidence to sustain Davis's conviction for class D felony intimidation.

We note that Davis's reliance on *Casey v. State*, 676 N.E.2d 1069 (Ind. Ct. App. 1997), is misplaced. In *Casey*, we reversed an intimidation conviction after concluding that the State had failed to allege and prove that the defendant threatened the victim in order to place her in fear of retaliation for a prior lawful act. *Id*. at 1072. Our decision was based upon the fact that the charging information failed to specify any prior lawful act which led to

6

the threats and the evidence regarding the threats themselves did not indicate that the threats were made because of any specific prior act. *Id.* at 1073. Indeed, although the State advanced several plausible prior acts, the evidence did not support a conclusion that the defendant was retaliating for any of those acts. *Id.* Here, to the contrary, the charging information specified a prior lawful act, arriving on the scene after being dispatched, for which Davis made his threats to Officer Lawalin. Moreover, as stated above, the evidence presented supports a reasonable inference that Davis intended that Officer Lawalin be placed in fear of retaliation for that prior lawful act.

Davis's reliance on *Ransley v. State*, 850 N.E.2d 443 (Ind. Ct. App. 2006), *trans. denied*, is similarly misplaced. In *Ransley*, we found the evidence insufficient to sustain an intimidation conviction because the alleged threat, as charged by the State, appeared to be aimed at the future action of keeping the victim off the defendant's property, and therefore was not in retaliation for a *prior* act. *Id.* at 447. Additionally, although the victim was given the opportunity to testify that the defendant had threatened to kill him for his prior lawful act of arguing, the victim made no such allegation. *Id.* Here, the alleged threat, as charged by the State, was made in retaliation for the prior act of arriving at the scene. There was ample evidence regarding Davis's anger and belligerence toward Officer Lawalin from the outset of his involvement with Davis which supports a reasonable inference that Davis's threat to Officer Lawalin was intended to place Officer Lawalin in fear of retaliation for the prior lawful act of arriving at the scene. Therefore, we affirm Davis's conviction for class D felony intimidation.

**Section 2 – Disorderly Conduct**

To convict Davis of class B misdemeanor disorderly conduct, the State was required to prove that he recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind. Code § 35-45-1-3(a)(2). Noise is considered unreasonable if it is too loud for circumstances that exist at the time. *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996).

The record reveals that Davis began yelling and cursing at Good News employees when he was asked to leave the shelter. As he moved his belongings onto the sidewalk, Davis continued "ranting and raving" the whole time. Tr. at 11. When Officer Lawalin arrived on the scene, "it was in a matter of a minute [Davis] became belligerent [and] argumentative with the police officer." *Id*. at 12. After a clearly intoxicated and very heated Davis said "f**k you" to Officer Lawalin, Officer Lawalin admonished Davis to "calm down." *Id*. at 21-22. When Davis refused to cease his cursing rant and calm down, Officer Lawalin advised him that he either needed to leave the area or go to jail. Davis refused to leave and instead put his hands behind his back to be handcuffed. After he was handcuffed, Davis continued his "belligerent rant." *Id*. at 22. Regarding the volume of his continuous rant, Officer Lawalin stated that Davis "was up and down, he'd mumble, rant and then he'd get very loud and belligerent towards whomever was close to him." *Id*. at 23. Officer Lawalin was especially concerned with Davis's loud behavior because he noticed a family with children on a porch across the street watching the commotion.

Based upon the record before us, we conclude that evidence of probative value exists from which the trial court could have found Davis guilty of class B misdemeanor disorderly conduct. *See Yowler v. State*, 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008) (evidence sufficient to sustain disorderly conduct conviction where defendant caused a disturbance sufficient to cause his neighbors to come out of their homes); *Humphries v. State*, 568 N.E.2d 1033, 1037 (Ind. Ct. App. 1991) (evidence that officer asked defendant to quiet down twice and told defendant he would be arrested, followed by decision to arrest defendant for disorderly conduct, raised reasonable inferences that defendant was speaking in unreasonably loud voice and evidence was substantial enough to support conviction).

Davis maintains that there is insufficient evidence that he made unreasonable noise, followed by an admonition to stop, followed by additional unreasonable noise. We disagree and conclude that the evidence and reasonable inferences to be drawn therefrom demonstrate exactly that.[2] Davis's arguments are essentially requests for us to reweigh the evidence in his favor, which we cannot do. *Boggs*, 928 N.E.2d at 864.

---

[2] Davis claims that our opinion in *Martin v. State*, 499 N.E.2d 273 (Ind. Ct. App. 1986), stands for the proposition that a single admonition by an officer to "calm down" is insufficient unless qualified by an additional warning that continuing to act in a certain way will result in a disorderly conduct arrest. Appellant's Reply Br. at 3. First, the *Martin* court made no such conclusion. Indeed, in *Martin*, because the officer gave an additional warning to the defendant, we specifically stated that "[w]e need not determine whether the officer's request to 'calm down' was a sufficient admonition." *Id*. at 276. Moreover, similar to the officer in *Martin*, in addition to admonishing Davis to "calm down," Officer Lawalin also advised Davis that he needed to leave the area or his only option would be to go to jail. As in *Martin*, these warnings together constitute sufficient evidence from which the trial court could find that Davis was sufficiently admonished to stop making unreasonable noise. *See id*.

Accordingly, we affirm Davis's conviction for class B misdemeanor disorderly conduct.

Affirmed.

BAKER, J., and BARNES, J., concur.